## The Enfield Toll Bridge Company *against* The Hartford and New-Haven Rail-Road Company.

The franchise of the *Enfield Toll Bridge Company* (aside from any special legislation regarding it,) is subject to the same legislative controul, for public use, as any other species of property.

Where a corporation created by the legislature of this state, was authorized to erect a bridge across *Connecticut* river from *Enfield* to *Suffield*, and to collect certain tolls ; and in the charter of incorporation, it was provided, that " no person or persons shall have liberty to erect another bridge any where between the *North* line of *Enfield* and the *South* line of *Windsor ;*" it was held, that this was not a covenant distinct from the franchise, but identical with it, and subject to the same laws.

Where the charter of a rail-road company gives to the corporation " all powers, privileges and immunities, which are or may be necessary to carry into effect the purposes and objects" of the charter ; it is the duty of the court to give the provisions of the charter such construction as will give them full effect ; and this can be done only by so treating the powers of the company, as that it shall have right, in a constitutional manner, to sequester both land and water, to take property both corporeal and incorporeal, or to interfere with privileges which may lie in its way, for the necessary completion of the work which it was empowered to construct.

Where the charter of a rail-road company provided, that the company should be holden to pay all damages that might arise to any person or persons ; and that freeholders should assess just damages to those whose real estate might be taken or *injured ;* it was held, that a franchise issuing out of land was an incorporeal hereditament, which might be treated as real estate within the charter, and an injury done to it, be the subject of assessment.

The 19th section of the charter of the *Hartford and Springfield Rail-Road Company*, which provides, that nothing therein contained shall be construed to prejudice or impair any of the rights now vested in the *Enfield Bridge Company*, was not intended to protect that company from the legislative power of eminent domain with respect to its franchise, but to declare, that notwithstanding the privilege of constructing a rail-road from *Hartford* to *Springfield* in the most direct and feasible route, granted by such charter, the franchise of the *Enfield Bridge Company* should remain as inviolate as

the property of other citizens of the state—*i. e.* if taken or injured, compensation should be made. [Two judges dissenting.]

*Hartford,*
June, 1846.
___
The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail-Road
Company.

AFTER the decision of this court, *ante* 40–67. the cause was continued in the superior court until the term thereof in *January* 1846, when the plaintiffs moved the court to order the issuing of an injunction against the defendants, as prayed for in their bill. The defendants thereupon filed a supplemental answer, showing reasons against the issuing of such injunction. The parties were fully heard upon the matters set forth in the supplemental answer, and thereupon the court found the following facts.

Prior to the date of the plaintiffs' original bill, the defendants, in pursuance of the provisions of their charter and the several amendments and additions thereto, surveyed, staked out, and located a centre line for their rail-road across *Connecticut* river and the land covered thereby, between the *North* line of *Enfield* and the *South* line of *Windsor*, from a point on the *Western* bank of the river, recently owned by *Elizabeth Parmelee* and others, and now by the defendants, in the town of *Suffield*, to a point on the *Eastern* bank of the river, recently owned by *Horace Holkins*, and now by the defendants, in the town of *Enfield*, and laid out their rail-road six rods wide, and definitely located it thereon. This line, laying-out and location the defendants, by their directors, on the 23d of *September* 1843, adopted as the definite location of that part of the line whereon to construct their rail-road; and afterwards, and before the date of the plaintiffs' original bill, the defendants submitted such location to *William H. Ellis, William Field* and *Hugh P. Welch*, the commissioners on the rail-road, duly appointed by the legislature. The defendants, by their directors, and the commissioners, notified the plaintiffs, that the rail-road had been thus located, designating the 29th of *September* 1843, at the rail-road depot, in the city of *Hartford*, as the time and place for a hearing before the commissioners of such objections as they had to make to the location. The plaintiffs appeared before the commissioners, and after a full hearing, the commissioners established said location as the line whereon the defendants were to construct their rail-road, pursuant to the requirements and provisions of their charter. This location is the same

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail-Road
Company.

upon which the superior court, in its finding upon the original bill of the plaintiffs, stated that the defendants were engaged in erecting their bridge, and had since completed it. [*Ante,* 45. 47.] The defendants thereupon made their application to the superior court, pursuant to the provisions of their charter, against the plaintiffs, for the appointment of three disinterested and judicious freeholders to assess the damages done to the plaintiffs, by reason of taking the premises upon which their rail-road had been so laid out, and by the location of their road thereon. This application was duly served upon the plaintiffs, returned to the court to which it was made returnable, and entered in the docket thereof. The parties respectively appeared, and the plaintiffs having objected to any proceedings thereon, and such objection having been overruled by the court, the parties were fully heard on said application ; and the court thereupon found the principal allegations therein contained to be true, granted the prayer thereof, and appointed *Bennet Bronson, Ebenezer Learned* and *Origen S. Seymour,* three judicious and disinterested freeholders, to assess all damages arising to the plaintiffs, by taking the premises upon which said rail-road was so laid out ånd located, and by the location of said road thereon. These freeholders, after their appointment, were duly sworn to the performance of their duties, and thereafter gave notice to the plaintiffs of the time and place of their meeting on the business of their appointment. In pursuance of such notice, they met at the time and place designated, at which time and place the parties respectively appeared before them, and they proceeded to hear the parties, carefully viewed and examined the premises, and enquired into the extent of the damages, and assessed the just damages done to the plaintiffs, by the defendants, in taking the premises, and by the location of their road thereon, and for all other injury and damage of every kind and description thereby done, or to be done, by the defendants, to the plaintiffs, at the sum of 350 dollars. Of this sum 25 dollars was assessed for injury or damage done to the plaintiffs, prior to said assessment, and included therein, by the consent and at the request of the defendants. The freeholders made their assessment in writing, under their hands, bearing date the 21st of *November* 1845, and, on that day, returned it to the clerk of the superior court, by whom it was re-

corded. Within sixty days thereafter, *viz.* on the 27th of <span>*Hartford,*<br>June, 1846.</span> December 1845, the defendants, at *Hartford*, offered and tendered to the plaintiffs the sum of 350 dollars, on account of <span>The Enfield Toll Bridge Company</span> said assessment; which the plaintiffs then and there declined and refused, and have ever since declined and refused, to accept, and have never received the same, or any part thereof. The premises in said application described, and for the taking of which, and the location of the rail-road thereon, the damages were so assessed, are the same upon which said railroad was laid out and located, and which was taken thereby, and upon which said rail-road has been constructed and the bridge of the defendants erected.

<span style="float:right">*v.*<br>The Hartford and New-Haven Rail-Road Company.</span>

The case, embracing not only these facts, but all the proceedings and documents, was reserved for the advice of this court as to what decree ought to be passed.

*Ellsworth* and *T. C. Perkins*, for the plaintiffs, after remarking, that the fact that the defendants had gone forward, and expended money, and built the bridge, and thereby violated the rights of the plaintiffs, placed them on no higher ground than if they had done nothing, contended, 1. That the taking of a *franchise* was not authorized, upon general principles, or by the provisions of the defendants' charter, which relate exclusively to the taking of *land*. [*Williams,* Ch. J. In the former case, the court intended to consider the question of taking a franchise, and to decide it; and this decision is not to be treated now as an *obiter dictum*. It was necessary to decide that point, in order to determine the main question, whether an injunction should be granted. If a franchise could not be taken, an injunction must issue, and there would be an end of the case. To this the other judges assented.] Admitting then that a franchise *might* be taken, the counsel insisted,

2. That in this case the exclusive right secured to the plaintiffs by their charter, though violated by the defendants, *had not* been taken by them. The doings of the directors show, that the *land* of individuals only was taken: the franchise is not mentioned or alluded to by them.

3. That the concluding clause of the plaintiffs' charter contains a *covenant* on the part of the state, which the legislature cannot annul or impair, it being protected by the constitution

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail-Road
Company.

of the *United States.* There were between the *termini,* the land, water and right of travel. The latter was subject to the regulation of the state *exclusively.* The riparian proprietors never had any right to erect a public bridge : by the covenant of the state with the plaintiffs, *they* lost nothing. The state, in regulating the public travel, authorized the plaintiffs to build one bridge, and then covenanted with them not so to regulate as ever to authorize another, within the same limits. That the state might do this, was fully settled in this case, last year. The following cases likewise establish the same point. *Adams* v. *Pease,* 2 *Conn. R.* 484. *Enfield Toll Bridge Company* v. *The Connecticut River Company,* 7 *Conn. R.* 28. *Bowman's* devisees v. *Wathen,* 2 *McLean's R.* 382,3,4. *Piscataqua Bridge* v. *New-Hampshire Bridge,* 7 *N. Hamp. R.* 35. 61, 2, 3. *Commonwealth* v. *Charlestown,* 1 *Pick.* 180. 185. *Livingston* v. *Van Ingen,* 9 *Johns. R.* 516. 563. *Charles River Bridge* v. *Warren Bridge,* 11 *Peters R.* 560. *Cayuga Bridge* v. *Stout,* 7 *Cowen* 33. *Cayuga Bridge* v. *Magee,* 6 *Wend.* 85. The legislature of this state has been accustomed to exercise a like power; and having exercised it, it cannot revoke what it has done, upon any terms or principles, under the constitution of the *United States,* not of a revolutionary character. *Trustees of Bishop's Fund* v. *Rider,* 13 *Conn. R.* 87. 94. *Gordon* v. *Appeal Tax Court,* 3 *Howard,* 145, 6. *Atwater* v. *Woodbridge,* 6 *Conn. R.* 223. *Osborne* v. *Humphrey,* 7 *Conn. R.* 335. *Parker* v. *Redfield,* 10 *Conn. R.* 490. *Landon* v. *Litchfield,* 11 *Conn. R.* 251. *Hart* v. *Cornwall,* 14 *Conn. R.* 228. *New-Jersey* v. *Wilson,* 7 *Cranch* 164. 7 *N. Hamp. R.* 44. 69. Suppose the legislature had promised a man to secure to him the benefits of a discovery, or the printing of the state for a year ; could such a promise be recalled or broken? This would be *undoing* the thing *done.* Now, the taxing of land, or allowing it to be taken for a road, though granted by the state, is the *undoing* or *breaking* of nothing. The government stands in the same relation to such land, after it is taxed or taken, as before : so of other franchises. But here is a covenant not to licence others ; and now a licence is given. In this case, there has not been any grant of property, but a clear covenant not to do a certain thing ; and now the plaintiffs complain, that the legislature is doing specifically what it

*Hartford,*
June, 1846.

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail Road
Company.

agreed not to do. If this may be done, because of public necessity, and under the claim of eminent domain, the government may repudiate its bonds, at an appraisal: it may have them assessed and cancelled. The point was raised and settled in the plaintiffs' favour, in *Piscataqua Bridge* v. *New-Hampshire Bridge,* 7 *N. Hamp. R.* 44. 69. That was a *grant;* and the court held, that a mere *contract* stood on different ground.

4. That the resolve of 1839, passed before any thing had been done or attempted under the charter of the *Springfield Rail-Road Company,* vests in the plaintiffs, (if need be,) the right to erect another bridge, within the exclusive limits of the plaintiffs, for the use of the defendants. This right the defendants have not taken, and cannot take. It has not even been appraised. According to the claim of the defendants, the plaintiffs are to lose it entirely, *without compensation.*

5. That the exclusive right of the plaintiffs is expressly reserved by the 19th section of *The Hartford and Springfield Rail-Road Company.* [*Ante,* 44.] The legislature say to that company, you may locate and construct your rail-road from *Hartford* to *Springfield,* by the most direct and feasible route, *provided* that in so doing you do not prejudice or impair any of the rights now vested in the *Enfield Bridge Company.* This cannot mean merely, that the rights of the plaintiffs shall be *paid for,* if infringed: *that* would follow, without such reservation. But the meaning is, you shall take nothing, and have nothing, by your charter, which will have the effect to prejudice or impair the rights of the plaintiffs. Take your charter subject to this restriction, or you take nothing. The defendants say, we are willing so to take it. Can they now nullify, or essentially vary, the condition? *The Clarence Railway Company* v. *The Great North of England &c. Railway Company,* 4 *Adol. & El. N. S.* 46. (45 *E. C. L.* 46.)

*Hungerford* and *Baldwin,* for the defendants, contended,
1. That private property, including franchises and easements of all kinds, may be taken for public use, upon a just compensation being made. *Piscataqua Bridge* v. *New-Hampshire Bridge,* 7 *N. Hamp. R.* 35. *Barber* v. *Andover,* 8 *N. Hamp. R.* 398. *Backus* v. *Lebanon,* 11 *N. Hamp. R.* 19. *Armington* v. Town of *Barnet,* 15 *Verm. R.* 745. *Boston Water*

YALE LAW LIBRARY

*Hartford,*
*June, 1846.*

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail-Road
Company.

*Power Company* v. *Boston and Worcester Rail-Road Company*, 16 *Pick*. 87.   Same parties, 23 *Pick*. 360.   *Dodge* v. *County Commissioners of Essex*, 3 *Metc*. 380.   *Ashby* v. *Eastern Rail-Road Company*, 5 *Metc*. 371.   *Brewster* v. *Hough*, 10 *N. Hamp. R.* 147.

2. That the right or interest of the plaintiffs in or over *Connecticut* river, between the *North* line of *Enfield* and the *South* line of *Windsor*, is a franchise, easement or servitude, and constitutes property which may be taken for public use. 3 *Kent's Com.* 366. 349. (1st ed.) 11 *Peters' R.* 563,4.   23 *Pick.* 395. 364.   *Ante*, 60.   Why should the grantee of such a franchise as this be regarded with more favour than the owner of a cherished homestead ?   The loss of the former, or an injury to it, may be fully compensated, by dollars and cents : not so as to a man's fire-side, court-yard or garden. Still either may be taken upon just compensation being made.

3. That the defendants are not precluded from taking this franchise, by virtue of the 19th section of the charter of the *Hartford and Springfield Rail-Road Company*.   In the first place, the defendants' road was not constructed under that charter, or by that company ; and the defendants are in no wise affected by that charter, further than its provisions have been made part of their own charter.   But those provisions relate solely to the extension of the road from *Hartford* to *Springfield*, in the most direct and feasible route.   Secondly, the legislature having a perfect right to take a portion of the plaintiffs' franchise, upon compensation made, the exercise of their right is no infringement of any right of the plaintiffs. Thirdly, the reason of inserting the proviso contained in the 19th section, was, to guard against such a construction as would authorize the company to cross the river within the protected limits, *without compensation*.

4. That the defendants' charter of incorporation is broad enough to authorize the appraisal of the franchise in question. *Chart*. of 1833. *sect*. 1. 7. 8.   This act is to be construed liberally for the purpose of carrying out the designs of the legislature, and for the purpose of effecting the improvement contemplated. 7 *Conn. R.* 576.   *Jerome* y. *Ross*, 7 *Johns. Ch. R.* 342,3.   *Rogers* v. *Bradshaw*, 20 *Johns. R.* 735.   *Wheelock* v. *Young*, 4 *Wend.* 647.   *Calking* v. *Baldwin*, 4 *Wend.* 667. *Boston Water Power Company* v. *Boston and Worcester Rail-*

*Hartford,*
*June, 1846.*

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail-Road
Company.

*Road Company,* 23 *Pick.* 360. 395. It was the intention of the legislature to give to the company a power sufficient to construct and complete the rail-road, and to put it into operation ; and all the provisions of the charter must be so construed, if they can be, as to give effect to this purpose. If the construction is to be restricted as the plaintiffs claim, the defendants could not locate their road over land in which an individual had a franchise, or an easement, or a term of years, or take a house belonging to one person, standing upon the land of another.

5. That the defendants, in taking the *land,* have taken all the interest therein necessary to be taken for the purposes of the rail-road. Under the word *land* or *real estate,* every estate, right and interest in or over the same is embraced, whether it be an estate in fee, or freehold, or any less estate, or whether corporeal or incorporeal ; and the right of taking by appraisal, is given to the company, as against all who have any *interest in* or *right over* the land, which is prejudicially affected, by reason of its being appropriated to the purposes of the road. Here it is to be observed, first, that the road has been located over the river, or the land covered by the water, of the width of six rods. No other seizure or condemnation of the land to their use is necessary, except the approval by the commissioners of the route ; which has been had. Secondly, if the company and those injuriously affected cannot agree as to the amount of damages, they are to be assessed by freeholders appointed by the superior court ; and the right of assessing damages extends to every interest in or over the land. Thirdly, the freeholders are to enquire into the extent of injury done to each individual, who has any interest in the land, or real estate, or over it, by reason of the laying out of the road ; and no other taking is mentioned or intimated as being necessary.

CHURCH, J. When this case was before us at a former term, we held, that the franchise of this bridge company was subject to the same legislative controul for public use, as any other species of property, whether belonging to corporate or natural persons. We suppose the question made on this argument respecting the constitutional power of the legislature, though varied somewhat in its phraseology, was distinctly raised, and decided by us, on the former hearing, as it had

HARVARD LAW LIBRARY

*Hartford,*
June, 1846.

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail-Road
Company.

been before, in the case of the town of *East-Hartford* v. *The Hartford Bridge Company*, 17 *Conn. R.* 41. 80. We shall not now discuss again a question so recently, and as we think, correctly settled.

The plaintiffs claim, notwithstanding, that here is something beyond the bridge franchise, which has been invaded.—A contract has been impaired. They insist, that the legislature, in their charter, entered into a covenant or a contract with them, that no bridge should thereafter be erected across *Connecticut* river within certain limits, which could not be constitutionally impaired, either with or without compensation, by the defendants, under any pretended authority from the legislature. This doctrine has the sanction of some respectable opinions, but of no adjudged case. There is a fallacy in the argument in support of it. The contract constitutes the franchise. All franchises emanating from the government, are the results of contracts between the state and individuals. To say, therefore, that although such franchises may be taken for public use upon compensation, and at the same time to insist, that the contract or covenant by which they are erected, is unconstitutionally impaired, is an absurdity. That contracts may as well exist between the state and corporate bodies, as between individuals, which are beyond their franchises, and beyond legislative controul, is true ; but the contract creating the corporation and defining its powers and privileges, is not of this character. This is identical with the franchise itself, and subject to the same laws.

However this may be, it is still insisted, that the charter of the rail-road company does not authorize an encroachment upon this species of incorporeal property. The charters of both the *Hartford and New-Haven* and the *Hartford and Spring-field* rail-roads expressly give to the respective companies " all powers, privileges and immunities, which are or may be necessary to carry into effect the purposes and objects of the acts." And we here repeat what we said, when this case, on a former occasion, was before us : " when such stipulations are made, it becomes the duty of the court to give them such construction as will give them full effect." This can be done only by so treating the powers of the rail-road company, as that it shall have right, in a constitutional manner, to sequester both land and water, to take property both corporeal and

incorporeal, or to interfere with privileges which may lie in its way, for the necessary completion of the work which it was empowered to constitute; and the entire language of both charters must be read with an eye to this object. *Ellis* v. *Welch*, 6 *Mass. R.* 246. *Parks* v. *Norton*, 15 *Pick.* 203. *Boston Water Power Co.* v. *Boston and Worcester Rail-Road Co.* 23 *Pick.* 360.

*Hartford,* June, 1846.

The Enfield Toll Bridge Company *v.* The Hartford and New-Haven Rail-Road Company.

So to limit the interpretation of these charters, in this particular, as the plaintiffs claim, would defeat the entire purpose of the legislature and of the rail-road company. It was known that a rail-road could not be constructed in this cultivated, improved and populated section of country, for any considerable distance, without encroaching somewhat upon turnpikes, ferries, fisheries and public and private rights of way. And we must suppose, that the legislature, when it gave the right to take land, intended, by the language it used, to confer also the power to interfere with all franchises appurtenant thereto, upon payment of just compensation therefor.

But furthermore, the charters of both rail-road companies authorize them " to enter upon and use all such lands and *real estate*, as may be necessary for them," in the manner and for the purpose expressed in the first section of the charters. A franchise issuing out of land, especially if of a freehold duration, is an incorporeal hereditament, and it may be descendible to heirs, and treated and considered as real estate, within the language as well as the spirit of the charters; and thus be taken by the rail-road company, as real-estate.

But again, the plaintiffs claim, that the rail-road company has not in fact taken the franchise in question, nor appropriated it according to the provisions of the charter. If this be conceded, it does not give strength to the argument. The rail-road company has had no occasion to take or appraise the bridge franchise: *that* remains as before, and the plaintiffs are in the enjoyment of it, somewhat diminished in value, or injured, as the appraisers and the court have declared, by reason of the location of the rail-road over land, in which it may be said, the plaintiffs had a qualified interest. But the rail-road charters have made provision for cases of this sort. In the seventh sections of both charters, it is provided, that the company shall be holden to pay all damages that may arise to any person or persons: and also, that freeholders

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail-Road
Company.

shall assess just damages, not only to the persons whose real estate may be taken, but whose real estate *shall be injured.* *Denslow* v. *New-Haven and Northampton Canal Co.* 16 *Conn. R.* 98. *Boston Water Power Co.* v. *Boston and Worcester Rail-Road Co.* 23 *Pick.* 360. *Ashby* v. *Eastern Rail-Road Co.,* 5 *Metc.* 368.

So far we agree, that the objections to the proceedings of the rail-road company are untenable. But a question of more difficulty arises under the 19th section of the *Hartford and Springfield* charter, which provides, that nothing therein contained shall be construed to prejudice or impair any of the rights now vested in the *Enfield Bridge Company.* The application of this section must not be confined to the charter in which it is found, but must be extended to the charter of the *Hartford and New-Haven* road, as directed by the resolve of *Oct.* 25th, 1842. These charters, with their amendments, must be treated as entire, and so construed that the whole shall have the effect to produce the result which the legislature intended.

The plaintiffs suppose, that, by the section referred to, the General Assembly intended to compel the rail-road corporation so to locate their road in this state, that it should be confined to the *West* side of *Connecticut* river, or that the crossing should be *South* of *Windsor* line. A majority of the court do not concur in this view. On the contrary, we think, the 16th section of the *Hartford and Springfield Rail-Road* charter looks to a very different procedure. This section is careful to make provision for the erection of a bridge across the river, and directs the mode of its construction, and the exclusive purpose for which it should be used; and in this, it would seem, as if the franchise of the *Enfield Bridge Company* was in view, and that while the legislature was giving authority to the rail-road company to cross the river within what are called the exclusive limits of the bridge company, they intended to guard its franchise from invasion any further than was absolutely necessary for the legitimate objects of a rail-road, and therefore directed, that all other travel over the bridge, either by horses, carriages or persons on foot, might be prevented.

In addition to this, power was expressly conferred upon the rail-road company to locate and construct their road, by

the most direct and feasible route. This is unequivocal language. Now, if the legislature had intended so essentially to modify this power, thus unconditionally conferred, as to confine the road to the *West* side of the river, or to push it over *South* of *Windsor* line, where it might have been nearly impracticable to construct it, it is most strange they did not use some language expressive of this purpose other than the equivocal language of the aforesaid 19th section. In one respect, the legislature did modify this power. By the resolve of 1842, it directed, that the road should be continued from the depot in *Hartford* within the *Western* boundary of the city to its intersection with *Asylum* street. But in no other respect did the General Assembly attempt an interference with the positive right of the rail-road company to locate its road in the most direct and feasible route. *Expressum facit cessare tacitum.*

*Hartford,*
June, 1846.

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail-Road
Company.

Before we fix the construction of doubtful language, we should look well to consequences—*Quod legis constructio non faciat injuriam.* That the road, as completed, is upon the most direct and feasible route, is now, since its approval by commissioners, to be taken as true. But it no where appears, that it was at all practicable to cross the river *South* of *Windsor* line, or to construct the road on the *West* side of the river, without an exhausting expense, or with curves so short as to render the travelling dangerous, and thus to place the whole undertaking at hazard. The superior court, in its finding of the facts in the case, says, to be sure, that a crossing at some other place, would not be entirely impracticable. Very probable. Impossibilities, in these days, where money and an adventurous spirit are the moving powers, hardly exist. Yet so expensive might the work have been, in some other place, as to have quenched the spirit necessary to its construction. Such a construction of the 19th section of the *Hartford and Springfield Rail-Road* charter as could produce such results, should not be adopted, without a strong necessity.

Besides, what are the rights of the *Enfield Bridge Company*, secured by this provision, which are to interpose an impassable barrier in the way of this rail-road? We have said before, and again say, they are equal to and no greater, than the rights of other persons, whether natural or corporate. This bridge company has the same right to be protected and

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New Ha-
ven Rail-Road
Company.

secured in the enjoyment of its property and franchises as the other citizens of the state ; and the legislature has the same right, by virtue of its power of eminent domain, to appropriate them for the public use, when necessary, and upon the same terms.    This must be so, unless here exists a contract beyond the franchise of the plaintiffs, which the legislature cannot impair ; but we have considered this before, and now again, and have decided that there is no such contract.

But the plaintiffs inquire, for what purpose was this 19th section introduced into the charter of the *Hartford and Springfield Rail-Road* ?    We think the intention obvious, without adopting the construction of the plaintiffs.    The history of this controversy shows, that the *Rail-Road Company* believed, that the location of their road over the protected limits, did not interfere with the franchise of the bridge company ; and that they had a right thus to locate and construct it, without making compensation.    Now, we suppose, that this section was enacted, not as the plaintiffs claim, to confer upon them greater rights and immunities than belonged to other citizens of the state, and to protect them from the legislative power of eminent domain, but to secure to them equal rights—a right to demand compensation, if their franchise should be impaired by the construction of the road.

A majority of us, therefore, are of opinion, that the proviso of the 19th section of the *Hartford and Springfield Rail-Road* charter, ought not to be so construed as to prevent the continuance of the defendants' bridge in its present location ; and upon the whole case, shall advise the superior court, that an injunction, as prayed for by the plaintiffs, ought not to be granted.

In this opinion WAITE and HINMAN, Js. fully concurred.

WILLIAMS, Ch. J. and STORRS, J. dissented as to the construction of the 19th section of the charter of the *Hartford and Springfield Rail-Road Company ;* which they supposed was intended, in connexion with other provisions of the charter, to guard against *any interference* with the rights of the plain-

tiffs within the protected limits. To the positions of the court regarding other parts of the case, they assented.

*Hartford,*
June, 1846.

The Enfield
Toll Bridge
Company
*v.*
The Hartford
and New-Ha-
ven Rail-Road
Company.

Injunction not to be granted.