THE NEW MILFORD WATER COMPANY *vs.* JULIA A. WATSON ET AL.

First Judicial District, Hartford, May Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and CASE, Js.

Where the power to condemn property depends upon a finding by the Superior Court, or a judge thereof, that the proposed taking is "expedient and necessary," the making of such a finding by a judge, as well as the subsequent appointment of appraisers, is an exercise upon his part of the judicial power which is vested in the Superior Court under our Constitution.

The order appointing appraisers is in the nature of a final judgment, from which an immediate appeal lies to this court; and such appeal must be seasonably taken if it is desired to review alleged errors in the earlier proceedings.

The duties of appraisers under such an order are administrative rather than judicial in character.

No rights can be acquired in condemnation proceedings under a charter, unless every requirement of the charter is complied with.

In the present case the appraisers were required by the applicant's charter to return their written assessment, together with the application, to the clerk of the Superior Court who was to record it, and thereupon the applicant was to pay the damages assessed and might then enter upon and use the property.   *Held :* —

1. That this imported a record, also, of the judicial order following the application and preceding the assessment, to the end that a full history of all of the steps relating to the alleged acquisition of title by the applicant might be spread upon the records.

2. That the natural place to record the proceedings was in the records of the court in the county in which the land taken was situate.

3. That it was unnecessary, on this appeal, to determine whether the Superior Court had jurisdiction to render any judgment at all upon the committee's report; since if it had not, the judgment appealed from could not injuriously affect the respondent, and if it had, the court had committed no substantial error in its proceedings; and in either case this court had jurisdiction of the appeal.

If the landowner desires to challenge the legality or propriety of the directions to the appraisers, in the order appointing them, he should at once appeal from that order: he cannot lie by on the chance of further errors in a subsequent stage of the proceedings.

The appraisers may properly disregard a protest based on the insufficiency of the application. Such objection should be made to the court or judge in the preliminary proceedings.

In a hearing before appraisers, where the sole question is what amount of damages shall be assessed, the burden of proof is upon the party owning the property taken.

A former judgment for the landowner in an action against the applicant, for damages caused by the same acts for which the appraisers are directed to assess damages, is admissible before the appraisers, and is conclusive as to the period to which it relates.

Administrative tribunals, such as appraisers of damages, are not bound to apply the strict rules of evidence. It is enough if they do not plainly transgress the fundamental lines of procedure, and in such a way as to indicate that substantial injustice may have been done.

Where a question arises as to what claims were made before the committee and how they were disposed of, its members may be called as witnesses.

A refusal by the committee to mention a ruling in their report may be ground for recommittal, but not for rejection, of the report.

The right of a lower riparian owner, under the Flowage Act (General Statutes, Rev. 1902, § 982), to acquire the privilege of flowing lands above him, is too remote to be considered as an element of damage in proceedings to condemn his water rights.

The respondents claimed damages for the whole tract of land owned by them when the applicant's reservoir was constructed, although shortly after that time part of the land was sold to *H*. *Held* that as the construction of the reservoir was wrongful, and gave rise to a new cause of action for each day of its continuance, *H*, rather than the respondents, was entitled to the damage accruing to his portion after he acquired title. Whether a different result would have been reached had the applicant's reservoir, from the first,

New Milford Water Co. *v.* Watson et al.

been a lawful structure, creating a permanent diversion of the water, *quære.*

The just compensation, to which the owner of property condemned is entitled, does not include the amount of costs and expenses to which he has been subjected in defending against the proceeding.

Appraisers are not bound, as matter of law, to consider the difference between the rental value of the riparian owner's premises before and after the taking, as the proper measure of his damage, and therefore are not obliged to detail in their report the facts upon which such a claim was predicated.

There can be no "taking" of private property, within the meaning of the constitutional guaranty, until condemnation proceedings are begun. An actual appropriation of the property before that date constitutes an invasion of the landowner's rights, which entitles him to recover for any visible and substantial damage he may have suffered; and each day's unlawful continuance or repetition of the original wrongful act is remediable in the same way.

The applicant's reservoir was constructed in 1874 and the respondents' water rights were then taken. Upon a hearing they claimed interest from that date, and the committee awarded $425. Upon their remonstrance the Superior Court found that their claim for interest was sustained by the committee precisely as made. *Held* that inasmuch as it did not appear but that interest constituted the greater part of the $425 awarded, it could not be said that the report was inconsistant with the finding.

In its judgment the court directed the applicant to pay the amount assessed to the respondents. *Held* that the court had no authority to include such order in its judgment, as the clause in the charter, directing the applicant to pay the damages assessed to the owner of the property taken, was both adequate and exclusive.

Whether the legislature can empower the appraisers in condemnation proceedings to include in their assessment of damages—where there was a wrongful dispossessing of the landowner before such proceedings were begun—compensation for the wrong already done, *quære.*

Argued May 6th—decided August 1st, 1902.

APPLICATION to *Hon. Charles B. Andrews*, as a judge of the Superior Court, for the appointment of appraisers of certain water rights in Litchfield County, to be taken under the plaintiff's charter; motion to dismiss denied, and a demurrer to application overruled, after which the application was heard and an order passed appointing appraisers, who returned a report of their appraisal to the Superior Court in Litchfield County. Here a remonstrance against its accept-

ance was filed and held insufficient (*Shumway, J.*). An answer was then filed, and a motion by the defendants for judgment on the pleadings denied (*Prentice, J.*). The petitioner then demurred to the answer, and the demurrer was overruled (*Elmer, J.*). The answer was then found untrue, the report accepted and judgment rendered (*Thayer, J.*) that the petitioner pay the defendants the sum assessed in the report as their just damages. Appeal by defendants to this court. *Error in part.*

The plaintiff was chartered in 1873 (7 Special Acts, 478) for the purpose (§ 1) of supplying New Milford with "pure water for public, domestic, and other uses," with power (§ 9) to construct and maintain such reservoirs, and dam such streams, and take such springs, as it might deem expedient or necessary, and to hire any water, and to construct and maintain aqueducts. The charter also provided that if "at any time it shall appear that any damage has occurred or is likely to occur to any person or persons, corporation or corporations, by the reason of taking their land or estates for the purposes of this Act, or in construction of the works of said company," an application might be made to the Superior Court of Litchfield county, or any judge of the Superior Court, for the appointment of three appraisers to assess "just damages," and that on payment thereof the plaintiff might "enter upon the premises and may proceed to the construction of said works."

In 1897, by an amendment (12 Special Laws, 708), it was also empowered "to take such land or lands, estates, brook or brooks," as it might deem expedient or necessary, and the following provision was made for condemnation proceedings: "If at any time it shall appear that any damage has occurred or is likely to occur to any person or persons, corporation or corporations, by the reason of taking their land or estates for the purposes of this Act, or in construction of the works of said company, and such persons or corporations have not agreed with said company for such damage, land, or estate, the said company, persons, or corporations may apply to the Superior Court of Litchfield county, or to any judge of the

Superior Court, who may by law judge the parties, causing reasonable notice, or such notice as any judge of said court may prescribe, to be given to the adverse party of such application; and thereupon said Superior Court or such judge, upon finding that it is expedient and necessary to take the property, easements, rights, and estates described in such application, shall appoint three disinterested, judicious persons (any vacancies which may occur in said number to be filled by said court or judge), who shall, after reasonable notice to the parties, assess just damages, if any, to the respective owners or parties interested in the premises so required and taken for the purposes of this Act, which assessment shall be in writing under the hand of such persons, and shall be returned with the application to the clerk of said Superior Court, who shall record it, and said company shall pay to said owner or parties the damage assessed, and when so paid may enter upon the premises, and may proceed to the construction of said works; or, in case the owners or parties aforesaid cannot then be ascertained, shall pay the same within thirty days to the treasurer of the county of Litchfield, to be by him paid to such person or persons as said court shall direct."

*Frederic M. Williams* and *Leonard J. Nickerson*, with whom was *James H. McMahon*, for the appellants (respondents).

*Donald T. Warner* and *Howard F. Landon*, for the appellee (the applicant).

BALDWIN, J.   The power of the plaintiff to take the water rights which it seeks to appropriate by this proceeding was made by its charter to depend on its obtaining a finding, either from the Superior Court of Litchfield county or a judge of the Superior Court, that such taking was necessary.   The judge of the Superior Court before whom it brought its application made such a finding; and this was an exercise on his part of that judicial power which is vested in the Superior Court.   *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, 601, 608.   His order making an appointment of appraisers was a

further exercise of judicial power, and if, in the proceedings leading up to it, he committed any errors of law, an immediate appeal could have been taken to this court. *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 437. Such an appeal lies only from a final judgment, and that is the nature of such an order. It ordinarily closes the judicial part of the proceedings, what remains to be done being of an administrative character, as the appraisers discharge only a quasi-judicial function.

The orderly conduct of judicial proceedings requires a record of them. The natural place in which to record the proceedings in the case at bar before the judge of the Superior Court was in the records of that court for Litchfield county, and the provision in the plaintiff's charter that every assessment of damages made on its application for taking land should be " returned with the application to the clerk of said Superior Court, who shall record it," imported that not only the application and the assessment, but also the judicial order following the application and preceding the assessment, should be thus recorded.

Provision was in this way made for spreading upon the records of that court a full history of any steps (except the making of the final payment) which the plaintiff might ever take under its charter in the exercise of its power of taking land or water without the consent of its owner, whereby it might claim that a title had been acquired. No land could be so taken, nor any right to divert water from another's land gained, unless every step to that end prescribed in the charter was fully accomplished.

The action of the committee appointed to assess the damages in the present proceeding was made by them the subject of a lengthy report. This sets forth a protest by the defendants against their undertaking to make any assessment, which they refused to entertain; a decision by them as to the burden of proof, to which exception was taken; and several rulings upon matters of evidence. It was therefore apparent that legal questions were presented, on the answer to which the validity of the assessment might depend.

These questions might have formed the subject of an equitable action to enjoin the occupation of the property which the plaintiff sought to appropriate. *Williams* v. *Hartford & N. H. R. Co.*, 13 Conn. 397. It is now the policy of this State that all courts shall, to the full extent of their jurisdiction, "administer legal and equitable rights and apply legal and equitable remedies, in favor of either party, in one and the same suit, so that legal and equitable rights of the parties may be enforced and protected in one action." General Statutes, § 877 (Rev. 1902, § 532). The present proceeding, as originally brought, was a suit at law. *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 437; *New York, N. H. & H. R. Co.* v. *Cockcroft*, 49 Fed. Rep. 3. It called for a determination, first, as to the propriety of a taking of the defendants' property for the plaintiff's purposes; and, second, should it be deemed proper, of the just amount of the necessary compensation. It certainly did not come to an end when the first point was determined. It remained to appoint proper persons to assess the compensation. It certainly did pass into a final judgment when that order of appointment was made; for else there could be no appeal to this court from such an order, and it is settled that such an appeal will lie. *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424; *Hartford & C. W. R. Co.* v. *Montague*, 72 id. 687. But a final judgment may be followed, in cases of certain kinds, by a further judgment. *Bunnell* v. *Berlin Iron Bridge Co.*, 66 Conn. 24, 37; *Barber* v. *International Co.*, 74 id. 652. The plaintiff's charter expressly provided for a judgment by the Superior Court, subsequent to the return of such an assessment of damages, in case the parties to whom these damages were due were not ascertained. It would be an unnecessary formality to institute any new and independent action to secure such a judgment. The basis of it would be the report of the appraisers in the hands of its clerk, and the way to ask for it would be by a summary motion in the proceeding of which the return of that report was an incident and which, for the purposes of such a motion, could fairly be considered as still in progress.

Both parties to the present proceeding have assumed that

the Superior Court had like jurisdiction to examine generally the report of the committee with a view to its acceptance or rejection. The committee incorporated a narrative of their doings in the return of their assessment to the clerk of the court, and addressed the return, not to him, but to the court. The court entertained a remonstrance to it. Four of its judges have since successively sat to dispose of questions thus presented, and it is to review their rulings that this appeal is brought.

In *Ferguson* v. *Stamford*, 60 Conn. 432, 447, we held that, under a charter directing a return of an assessment of benefits on account of a municipal improvement to be made to the Superior Court, no order of the court relating to or accepting the return was requisite. The charter then under consideration gave a remedy for any injustice that might be done through such an assessment, by an application in the nature of an appeal to a judge of the Superior Court for a reassessment; and we observed that there could be "no presumption that the legislature intended a remedy by remonstrance and also by appeal." In the plaintiff's charter no opportunity to obtain a reassessment is afforded.

In *Williams* v. *Hartford & N. H. R. Co.*, 13 Conn. 110, we held that in condemnation proceedings under the charter of that company, a writ of error did not lie to review the record of them in the records of the Superior Court, when no act had been done or required to be done by the court upon the return of the appraisal. In the case at bar the return was addressed to the Superior Court, and a matter was thus brought directly before it upon which it acted. A final judgment having been rendered, the propriety of that judgment is a proper subject of appeal.

Whether the Superior Court had jurisdiction to render any judgment at all, there is no occasion to determine.

If it had not, the judgment appealed from could not be challenged by the defendants, for in that view of the case they have not been injuriously affected by it, their rights remaining as they were when the return was lodged with the clerk, and all subsequent proceedings having been *coram non*

*judice.* Public Acts of 1897, p. 892, Chap. 194, § 15 (Rev. 1902, § 802). Nor have they in fact appealed on any such ground.

If, on the other hand, the Superior Court had jurisdiction, it committed no substantial error in its proceedings.

Error is first assigned with reference to certain rulings made by the judge of the Superior Court prior to his order appointing the committee of appraisal, and upon the order itself. These errors, if errors they were, would have founded an appeal from that order. *New York, N. H. & H. R. Co.,* v. *Long,* 69 Conn. 424, 437. The defendants could not lie by on the chance of further errors in a subsequent stage of the proceedings. The order was a final judgment, at least as the case then stood, and there having been no appeal from it within the time limited by statute (Public Acts of 1897, pp. 893, 895, Rev. 1902, § 807), its validity cannot now be challenged in that manner.

The remonstrance to the acceptance of the report returned by the committee was properly overruled. The main objection to it was that they included in their assessment damages for an unlawful occupation of the premises for a considerable period before the condemnation proceedings were instituted. This is apparently true, but it was precisely what they were directed to do by the order of appointment. That constituted their commission, and they could not act irregularly or improperly so long as they conformed to its mandate. If its directions were wrong, the remedy was by an appeal from that order; and none was taken.

The defendants also protested before the committee against their proceeding to act, on account of the uncertainty and insufficiency of the application. This protest was properly disregarded. The place to make any objection on such a ground was in the preliminary proceedings before the judge of the Superior Court.

The defendants claimed before the committee that the plaintiff had the affirmative and should go forward. This claim was overruled and they were compelled to proceed first to introduce their testimony.

The application alleged that the plaintiff, on or about December 1st, 1874, built a reservoir on Cross Brook and had ever since been taking water from that reservoir; that Cross Brook flowed into Great Brook which, at a point about two miles from the reservoir, ran through a parcel of land of the defendants, comprising about two acres and a half; that it was necessary to take their rights in the water which would thus naturally flow over this land; and that damage had already occurred and was likely to occur to the defendants from said acts of the plaintiff, as to the amount of which it could not agree with them. The appointment of a committee was therefore asked " to assess the damages, if any, which have occurred and may occur " to the defendants by reason of the taking of the waters " so required and taken." The answer denied the legality of the taking, and the disagreement as to the amount of the damage, admitting substantially the other allegations.

The complaint having been found true by the judge of the Superior Court, before he appointed the committee, the single question before them was that as to the amount of the damages, past and future, to be assessed. The defendants were best acquainted with the alteration in the condition of their property which had been wrought by the construction and use of the plaintiff's reservoir. The plaintiff had nothing to prove, to entitle it to the assessment of damages for which it asked. The defendants had something to prove, if they wished the assessment to be for a substantial sum. The burden of proof therefore was properly held to be on them. *Connecticut River R. Co. v. Clapp*, 1 Cush. 559, 563.

The plaintiff was allowed to introduce in evidence before the committee the record of another action, in which the present defendants had sued it for an unlawful diversion of water and injury to their property from 1874 to 1896, by reason of the same acts for which the committee had been directed to assess the damages already incurred. A judgment in this former action (which was one the first trial of which is reported in 71 Conn. 442) had been rendered for $25, and the plaintiff claimed that this settled conclusively the amount of

the damages done during the period to which it related. The record was properly admitted, and had the effect thus claimed. The matter was in every sense *res judicata*.

A later action had been brought by the defendants against the plaintiff, shortly before the present application, for damages accrued since April, 1896, and for an injunction against the further diversion of water. A demurrer to the complaint, because the only remedy open to the defendants was that given in the plaintiff's charter, was filed and overruled, with leave to amend. Another demurrer, for the same general cause, was then filed, and an order thereupon made continuing the cause "until after the termination of the condemnation proceedings now pending." The defendants offered the record of that suit in evidence, but, on objection by the plaintiff, it was admitted solely to show that such a proceeding was pending.

In respect to this, and to many other rulings on evidence which are stated in the report of the committee and were unfavorable to the defendants, it is sufficient to say that the case does not stand upon the ground of one heard before a regular judicial tribunal. It was heard before an administrative tribunal; and administrative tribunals are not bound to apply the strict rules of evidence which prevail in courts. *Bristol* v. *Branford*, 42 Conn. 321, 322. It is enough if they do not plainly transgress the fundamental lines of procedure, and in such a way as to indicate that substantial injustice may have been done. This does not appear in the present case.

. The remonstrance alleged, and the plaintiff admitted, that the defendants claimed before the committee that they were entitled to damages as of the date of the taking (December 1st, 1874) alleged in the original application, with interest therefrom. It also alleged, but this the plaintiff denied, that this claim was overruled and that the committee refused so to hold and even to mention any such claim in their report. On the trial in the Superior Court of the issue thus raised, the defendants relied simply upon what appeared on the face of the report, and the plaintiff introduced no evidence. In this state of proof the court was justified in finding the issue

for the plaintiff. The main question in dispute was whether the claim made had been overruled. The report did not show that it had been. It was therefore for the remonstrants to prove it. The report itself was not the only source of proof. *McKeon* v. *Byington*, 70 Conn. 429, 432. The committee could have been called as witnesses. *Mosman* v. *Sanford*, 52 Conn. 23, 33.

Had they made such a ruling and then refused to mention it in their return, it might in the discretion of the court be ground for a recommittal, but could be none for the rejection of the report.

The defendants claimed that as under the Flowage Act (General Statutes, § 1216, Rev. 1902, § 982) they could have maintained a petition to acquire the privilege of flowing the lands of riparian proprietors above them on the brook, they were entitled to damages for the value of this right of action, or for what their property would be worth if such a petition had been brought and granted, less the cost of the proceedings and of the compensation that might be awarded to those whose lands might be thus flowed. The committee properly overruled this contention. The element of damage thus claimed was too remote and consequential. *Watson* v. *New Milford Water Co.*, 71 Conn. 442, 451.

The plaintiff was allowed, against the objection of the defendants that it was irrelevant to the issue, to introduce before the committee a deed given by them after 1874, to one Hill, of land which it claimed was part of the parcel belonging to them, the water from which it had then already begun to divert by its reservoir. The defendants afterwards claimed that, notwithstanding such conveyance, they were entitled to compensation for the damage to the whole parcel owned by them in 1874; but the committee overruled the claim.

In this there was no error. The claim was too broad. The committee were assessing damages for the taking of certain land or water rights, the payment of which would work a transfer of title from the defendants. The plaintiff was not seeking to condemn the property of Hill. From and after

the date of his acquisition of title to the parcel deeded to him, he would have the right of action for damages to that parcel by the continuance of the plaintiff's works. The construction and maintenance of its reservoir would appear from the record to have been a daily invasion of the rights of the riparian proprietors on Great Brook. *Denslow* v. *New Haven & N. Co.*, 16 Conn. 98. Had it been from the first a lawful structure, creating a permanent diversion of the water, it might be that all the damage done or to be done to the original parcel would have been due to the defendants, for then the parcel sold to Hill would have gone to him subject to this burden. *Fowle* v. *New Haven & N. Co.*, 112 Mass. 334, 338.

On the final hearing in court after the remonstrance had been overruled, the defendants asked that the amount of the costs and expenses to which they had been subjected in defending against the proceeding might be adjudged to them as part of their just compensation. This claim was properly overruled. They were entitled to just compensation, but to nothing more. In assessing damages in a personal action for an unlawful injury, the legal costs and expenses which may have fallen upon the plaintiff by reason of the acts complained of cannot be considered. Under a statute he may be awarded the taxable costs but, if so, they come as an addition to his just compensation, and he could not claim them at common law, unless it were a proper case for the allowance of smart money. The same rule applies, and with even greater reason, to *in rem* proceedings under the power of eminent domain, for here the injury to or taking of the defendant's property is done by right or, at least, under color of right. *Stevens* v. *Danbury*, 53 Conn. 9, 23.

No objection was taken at any stage of the proceedings preceding the appeal, by either party, to the validity of the provision in the plaintiff's charter under which the committee were directed to assess the damages already done by its unlawful diversion of water to the defendants' injury. We have not therefore considered any constitutional question that might otherwise have been presented. *Norwalk* v. *Blanchard*, 56 Conn. 461, 463.

It appeared on the hearing before the committee that there had been a mill and pond upon the defendants' land, which rented for $60 a month; that the dam was carried away by a freshet in 1874, and before it could be replaced the plaintiff built its reservoir; and that all the rent they could thereafter get from the premises was $18 a month. The committee were asked to report these facts specially, but refused; and also refused to consider $42 a month as the proper measure of the defendants' loss. They were not bound as matter of law to consider it as such, nor therefore to detail in their report the facts on which the claim was predicated. Rules of Court, p. 34, § 100.

A motion by the defendants for the rejection of the report and the dismissal of the application was made in the Superior Court and denied. The sole reason which was stated in it was that the proceedings were insufficient upon their face. The only objection on this score, which we have not already considered, is that, notwithstanding it was conceded that the defendants' property was taken on December 1st, 1874, interest since that date cannot have been allowed, because the total sum assessed as damages is only $425. How much of this sum stands for original damage and how much for interest does not appear. It may be, therefore, that interest constitutes the greater part. As a matter of law, however, no taking of the defendants' property, within the meaning of the constitutional guaranty, occurred before the condemnation proceedings. *Enfield Toll Bridge Co.* v. *Hartford & N. H. R. Co.*, 17 Conn. 454, 463. Their rights were invaded on December 1st, 1874, and if any substantial damage that was evident and visible had been done on that day, they could have recovered the amount of it, with interest, by an appropriate suit. *New York, N. H. & H. R. Co.* v. *Ansonia L. & W. P. Co.*, 72 Conn. 703, 705. Every day's continuance of a wrongful diversion of water from its natural course with the like results, by the maintenance of the plaintiff's reservoir after December 1st, 1874, would have been remediable in the same way. In fact they have brought two successive suits, each on such a cause of action.

The whole damage therefore not having been done on any one day, because the original act was an act of wrong, and not the construction of a lawful reservoir which could be rightfully maintained forever, the defendants' motion for judgment had no merits in any aspect. But the report is not inconsistent with the finding of the Superior Court, that the claim for interest was sustained precisely as it was made; and, therefore, whether it was sound or unsound, the defendants can have no cause of complaint.

There is, however, an error not assigned, in the form of the judgment rendered. This was "that the remonstrance to said report of the committee be and it is overruled and the report of said committee be accepted, and that the petitioner pay to the said Julia Watson and Joseph E. Watson the sum of four hundred and twenty-five dollars, without costs."

Whether the Superior Court did or did not have jurisdiction to accept the report of the committee, it certainly had none to direct the payment of any sum to the defendants. The provision in the plaintiff's charter was adequate and exclusive. *Stevens* v. *Danbury*, 53 Conn. 9, 22.

The judgment appealed from is modified by striking out the words "and that the petitioner pay to the said Julia Watson and Joseph E. Watson the sum of four hundred and twenty-five dollars," and, as so modified, it is affirmed. No costs will be taxed in this court for either party.

In this opinion TORRANCE, C. J., and HALL, J., concurred; HAMERSLEY and CASE, Js., dissented.

CASE, J. (dissenting). The validity of any judgment depends primarily upon the jurisdiction of the court rendering it. To recognize the one in question as a valid judgment is to assume that the Superior Court had jurisdiction of the proceeding before it. I cannot concur, therefore, in the opinion of a majority of the court that there is no occasion to determine whether the Superior Court had jurisdiction to render any judgment at all. "If a judgment is not simply

New Milford Water Co. *v.* Watson et al.

erroneous, but void, there is so much the more reason for the authoritative declaration of its invalidity by the court of last resort." *Belden* v. *Sedgwick*, 68 Conn. 560, 567. Nor do I agree with their conclusion, which, by affirming the judgment appealed from, necessarily determines that that court had jurisdiction to render it.

It seems to me that the Superior Court was wholly without jurisdiction of the case presented upon the record. That the parties assumed otherwise, and that the committee reported its doings in detail to the court instead of returning its award to the clerk as the plaintiff's charter directs, cannot alter the situation. Nor is their position in any respect changed because the committee so framed the report embodying its award as to present questions which should have been passed upon in advance by the judge who issued the commission. Such of these as are essential were, in fact, so raised before and determined by him. The correctness of his conclusions upon these material matters should have been challenged, if at all, by an appeal to this court from his action. *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424. By the provisions of the plaintiff's amended charter, a commission is to issue only after the authority applied to has passed upon the merits of the application and found "that it is expedient and necessary to take the property, easements, rights and estates described" therein. Under the orderly procedure which the charter presupposes, the parties have had their day in court, with a full right of appeal, when the matters properly noticeable and determined by that authority have resulted either in a denial of the application, or in the appointment of a committee with full and precise directions as to its single duty.

In this case the application was unsuccessfully attacked before the judge, and a committee was appointed upon the finding prescribed by the charter. The judicial part of the proceeding ended there; the committee's only function was to follow the explicit mandate of its commission, make its award, and return its figures to the clerk. In no sense was this returned award ever properly in court, or the subject of judicial action

in this proceeding. The failure to impose upon the appointing judge, or upon the Superior Court, the duty of reviewing the committee's action, is in apparent harmony with the legislature's intent. That it perhaps overlooks a simpler and more direct process, in providing one that may work substantial inconvenience to the parties, gives the courts no power to substitute the one for the other. *Ferguson* v. *Stamford,* 60 Conn. 432, 447. What redress an aggrieved party may have or how he shall proceed to get it, if the committee steps outside the bounds of its precise authority, are matters which call for no determination here; it is enough to know that a court of equity has ample power to grant appropriate relief in such a situation when its aid has been properly invoked.

The proceeding actually involved is one for which the charter neither provided nor intended to provide any action by the Superior Court supplementary to or in confirmation or disapproval of the committee's award. An authority to invoke the aid of that court in a single situation, and for the single purpose of directing the destination of damages where the owners of the property involved " cannot be ascertained," imports no jurisdiction to review the action of the committee; and this proceeding entirely lacks the occasion for resorting to the court for even that limited purpose. It is therefore not distinguishable from the proceeding considered in *Ferguson* v. *Stamford,* 60 Conn. 432, 447. Here, as there, " the proceeding is not in the Superior Court. The committee, although appointed by a judge of that court, is not an arm of the court, and the validity of its proceedings in nowise depends upon any action accepting or approving its doings."

As the trial court was without jurisdiction, it certainly gained no power to review the proceedings by the mistaken act of the committee in bringing the award before it. If the award was improperly there, the subsequent attitude of the parties, and their acquiscence in the court's assumption of its right to entertain the matter, are without significance. They could not thus confer a jurisdiction, nor could they authorize the court to act in this proceeding merely because questions were perhaps involved which would properly call for its ac-

tion if made the subject of an independent proceeding regularly and directly brought before it. To hold otherwise is to define a principle novel in our practice at least, and full of perplexing possibilities in its bearing upon future cases. Yet the majority opinion of this court leans decidedly in that direction. It pointedly suggests that the equity powers of the Superior Court are broad enough to justify its course in these proceedings. For the reasons indicated, I think such a view cannot be sustained, and that a disposition of the case which rests impliedly upon such grounds is unwarranted.

Courts will go a long way and make some concessions where the end in view is to avoid circuity of action, but that end ceases to be desirable when reaching it involves either a departure from established principles, or such a qualified recognition of them as leaves in doubt the extent of their general application.