THE NORWICH GAS AND ELECTRIC COMPANY *vs.* THE
CITY OF NORWICH.

*Third Judicial District, New Haven, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

Chapter 231 of the Public Acts of 1893, now §§ 1978 to 1997 of the General Statutes, allows cities and towns to establish gas or electric plants for furnishing light for municipal use and the use of citizens paying therefor, but requires the municipality, before setting up its own plant, to purchase the local plant of a specially chartered corporation engaged in like business, if there be one, provided such corporation shall elect to sell and comply with the terms of the Act. In case of a disagreement as to what shall be sold, or as to the terms of sale, the Act provides that either party may apply to the Superior Court for the appointment of a "special commission," who shall hear the parties and "adjudicate" those matters, and that its doings shall be reported to said court for confirmation. If a remonstrance to the report is sustained, the court is to set aside the report in whole or in part, as justice may require, and appoint another "special commission;" and this procedure is to be repeated, if necessary, until the report, "covering all questions involved," has been confirmed by the Superior Court, which may compel compliance with its final decree and issue and

---

*Transferred from the second judicial district.

Norwich Gas & Electric Co. v. Norwich.

enforce such interlocutory orders as justice may require. Upon appeal by the defendant from a judgment of the Superior Court accepting and confirming the action of such a commission it was held: —

1. That the question of the constitutionality of the Act of 1893 was one beyond the province of the special commission, its duty being simply to execute the powers confided to it by the Superior Court.

2. That the special commission was not a "court," nor its members "judges," within the meaning of Art. 5, §§ 1 and 3, of the Constitution of this State, which require courts to be established and judges appointed by the General Assembly.

3. That the compulsory purchase feature of the Act did not confer "exclusive public emoluments or privileges" upon the plaintiff in violalation of Art. 1, § 1, of the Constitution of Connecticut, since the duty of purchasing such plants rested equally on all municipalities seeking to take advantage of the statute, and was owed equally to all corporations in the situation of the plaintiffs. While no man or set of men are entitled to demand exclusive privileges from the State, it may grant them, for proper cause and on equal terms, to certain sets of men or classes of corporations.

4. That the legislature had the right to create a particular kind of administrative tribunal to decide questions regarding the value of property to be appropriated, to a public use, whether by a public or a private corporation, and the method and terms of such appropriation.

5. That in estimating the sum to be paid by the city for the plaintiff's property, the commission was not confined to a valuation of the bare physical plant, and committed no error in taking into account its earning capacity as a going concern, based upon its actual earnings, the expense of operation and the changes, if any, needed for the reasonable improvement of the plant, and the probable results thereof as bearing upon the output; also the fact that the plaintiff had an established business, built up at the risk of private capital after experiments and changes during a long period, as well as the policy of the State in dealing with public-service corporations like the plaintiff, in so far as that policy or purpose was manifested by the terms of the statute.

6. That it was unnecessary, and could serve no useful purpose, for the commission to specify separately each item of value which it included in the purchase price fixed by it.

7. That it was within the jurisdiction of the Superior Court, in framing the final judgment, to provide for the due fulfilment of the terms and conditions of sale laid down in the report, although it could not impose other or additional obligations upon the parties.

8. That the judgment, in fixing the date of the sale and transfer; settling the particular form of the warranty deed and bill of sale and the date and manner of their delivery; in computing interest and

liquidating the precise amount of the purchase price; and in or-dering the issue of an execution for the amount due at the date fixed for payment, did not depart from but merely gave effect to the terms of the report.

9. That the sale of the plant, subject to the mortgage, as directed by the commission, imposed no direct obligation upon the city to pay the mortgage bonds or interest thereon, and therefore a clause of the judgment which required the city to reimburse the plaintiff for such instalments of interest as it should thereafter pay, was erroneous, and unauthorized either by the statute or the commis-sion's report. Under such circumstances the plaintiff must look solely to its equitable charge upon the mortgaged property for in-demnity.

States, as well as individuals, can recognize honorary obligations.

The equal protection of the laws is not denied by treating different classes of persons in a different way, if it be a way not inappro-priate to the class, and the class be set apart from others on rea-sonable grounds.

Where it becomes a material question, the members of a commission may testify, upon a hearing of a remonstrance to their report, as to what matters were considered by them in reaching their con-clusion; but evidence by the remonstrant that the adverse party submitted to the commission a brief in which the alleged improper matter was called to their attention, is too remote and conjectural.

The plaintiff's plant was mortgaged to secure negotiable bonds to the amount of $400,000, which bore five per cent. interest payable semi-annually, and did not mature until 1927. *Held* that in the absence of any attempt by either party to have the con-tract rights of the bondholders condemned, the commission could not condemn them, and was justified in ordering a sale and purchase of the plant subject to the mortgage; notwithstanding the claim of the city that the property should be transferred free and clear of all incumbrance, and that it could borrow money to pay off the bonds for three and one half per cent.

The city claimed that the bonds were invalid, but the commission found otherwise. *Held* that this issue could not be retried in the Supe-rior Court upon remonstrance, inasmuch as the statute required it to be determined through the medium or agency of the "special commission;" much less could it be retried upon a claim that the report of the commission was against the weight of evidence.

In hearing a remonstrance to the report of the special commission, the Superior Court is not an "appellate court or tribunal," within the meaning of that expression in General Statutes, § 693, respecting the use of depositions; nor does such section change the rules af-fecting the relevancy of evidence.

Upon the hearing of its remonstrance the city sought to introduce the stenographer's report of all the testimony given before the com-

---

Norwich Gas & Electric Co. v. Norwich.

---

mission on the question of values. *Held* that inasmuch as the commission viewed the plant and might have thus derived decisive impressions of its value, which evidence could not be placed before the Superior Court, the stenographer's notes were for this reason, if for no other, properly excluded.

Argued January 26th—decided April 14th, 1904.

APPLICATION to a judge of the Superior Court, under Public Acts of 1893, Ch. 231, § 13 (General Statutes, § 1993), to compel the defendant to purchase the plaintiff's plant. A special commission of three was appointed to make the adjudication called for by the statute. The defendant filed two motions before the commission to dismiss the cause, which were denied. The commission filed its report in court, and the defendant remonstrated against its acceptance, and also moved to recommit it, and subsequently to erase the cause from the docket for want of jurisdiction. A supplemental report was afterwards filed, making no substantial change. The motions to recommit and erase were denied, the remonstrance overruled, the report of the commission confirmed, and a judgment rendered which was based upon it (*Robinson, J.*), from which the city appealed. *Error in part.*

*Nathan Matthews, Jr.*, of Boston, *Gardiner Greene* and *Joseph T. Fanning*, for the appellant (defendant).

*Henry Stoddard* and *Frank T. Brown*, for the appellee (plaintiff).

BALDWIN, J. The special commission properly denied the motion for the dismissal of the proceedings, filed before it on the ground that the statute upon which they are based is unconstitutional and void. Its only business was to execute the powers which had been confided to it by the order of the court, without inquiring into their legal validity. *New Milford Water Co.* v. *Watson*, 75 Conn. 237, 245.

A similar motion filed in the Superior Court was properly overruled on its merits.

The statute in question (General Statutes, §§ 1978–1997) allows cities, towns and boroughs, to set up plants for the manufacture and distribution of gas or electricity for furnishing light for municipal use, and for that of such of their inhabitants as may desire and pay for it, and to meet the expense of procuring any such plant by an issue of bonds ; with the proviso (§ 4) that " no indebtedness shall be incurred by any city or town or borough, in connection with such plant, except as aforesaid, and excepting further, that money may be borrowed temporarily to pay the running expenses thereof."    By § 12, " when any city, town, or borough shall decide, as herein provided, to establish a plant, and any corporation incorporated by the general assembly, for the purpose of furnishing gas or electric light, heat, or power, shall at the time of the first vote required for such decision, be engaged in the business of making, generating, or distributing gas or electricity, for sale for lighting purposes to consumers in such city, town, or borough, such city, town, or borough shall, if such corporation shall elect to sell and comply with this act, before establishing its plant, purchase of such corporation, such portion of its plant for gas, and property suitable and used for such business or in connection therewith, if the city, town, or borough shall have decided to establish a gas plant, or of its plant for electric lighting, and property suitable and used for such business or in connection therewith if such city, town, or borough shall have decided to establish . . . an electric lighting plant, as shall have at the time of the first vote, been engaged in or acquired for such business.    If, in any such city, town, or borough, a single corporation owns or operates both a gas plant and an electric plant, such purchase shall include both of such plants. . . . The price to be paid for such plant, whether gas or electric, or both, shall be its fair market value for the purposes of its use (no portion of such plant to be estimated, however, at less than its fair market value for any other purpose), including as an element of value, the earning capacity of such plant, based upon the actual earnings being derived from such use, at the time of the final vote of said

city, town, or borough to establish a plant, and also including the market value of any other locations or similar rights acquired by the owners of such plant or plants, with the intention of using the same in connection with such plant or plants, less the amount of any mortgage or other incumbrance or lien to which the plant or plants so purchased or any part thereof, may be subject at the time of the transfer of title; but such city, town, or borough may require that such plant or property shall be transferred to it free and clear of any mortgage or lien, unless said superior court, through its special commissioner as hereinafter provided, shall otherwise determine."

There were also the following provisions : " Sec. 13. Any corporation desiring to enforce the obligation of any city, town, or borough, under this act, to purchase any property shall file with the clerk of said city, town, or borough, within thirty days after the passage of the final vote, whereby said city, town, or borough shall have decided to establish a plant, a detailed schedule, describing such property, and stating the terms of sale proposed.

" If the parties fail to agree as to what shall be sold, or what the terms of sale or delivery shall be, either party may, after thirty days after filing the schedule, apply by petition to the superior court for the county in which such plant is located, or to any judge thereof in vacation, setting forth the facts, and praying an adjudication between the parties, and thereafter such court or judge shall, after notice and hearing, appoint a special commission of one or three persons who shall give the parties an opportunity to be heard, and shall thereafter adjudicate whether the property contained in said schedule, real or personal, including rights and easements, properly belong to such plant, and should be sold by the one and purchased by the other, and what the time, price, and other conditions of sale and delivery thereof shall be. Such commission shall report its doings to the superior court for the county in which the plant is located for confirmation by said court.

" Sec. 14. Any party aggrieved by the doings of the com-

mission may, within fourteen days after its report has been filed with the clerk of said superior court, or such longer time as such court may allow, file a remonstrance to said report, and such court shall hear the questions arising on such remonstrance, and if the matters of the remonstrance are found true and sufficient, such court may set aside the report in whole or in part, as the justice of the case may require, and appoint another special commission to rehear the case, in whole or in part, as the justice of the case may require, who shall make report of its doings in the premises to said superior court, which will be subject to remonstrance in like manner as the original report, and in case such remonstrance is sustained, the court shall likewise send the case to another commission for action, and like proceedings shall be had, until the report of such commission or commissioners, covering all the questions involved, shall have been confirmed by the said superior court."

The defendant contends that so much of this statute as authorizes municipalities to acquire, set up, and operate such plants is valid, but that the provisions for forcing them to buy out any such plants already established is void.

The first point urged in support of this contention is that the special commission is entrusted with such judicial power as to make it a court, although it is not established in the manner in which courts, by our Constitution, must be. That the statute uses the term "adjudication," as descriptive of the decision which the commission is charged with rendering, is not enough to change the obvious character of that body. Whether it be regarded as an arm of the court in the exercise of its legal or equitable jurisdiction, analogous to a special jury or committee, or as a tribunal in the nature of a board of appraisers or other body appointed to ascertain the just compensation to be paid for property condemned for a public use, it is clear that it is not a court, nor its members judges, within the meaning of the constitutional provisions prescribing the mode by which judges are to be appointed. Its functions are but quasi-judicial. *State* v. *New Haven & N. Co.*, 43 Conn. 351, 382; *New Milford Water Co.* v. *Watson,*

75 id. 237, 242, 247. Only if its report is confirmed can it assume the character of a judicial act, and then that character will be due wholly to the approving judgment of the court to which it was returned.

The second point made is that the commission is appointed to try the rights of particular parties and give the plaintiff the benefit of an exclusive privilege.

This is claimed to be contrary to § 1 of our Declaration of Rights, "that no man or set of men are entitled to exclusive public emoluments or privileges from the community."

In the statute in question, the General Assembly was dealing with two classes of artificial persons of its own creation, public corporations and public-service corporations. It desired to allow certain public corporations to engage in the business of lighting the streets and buildings within their limits, and it is equally apparent that it desired to do no injustice to any private corporation which it had previously chartered to do the same work and which had invested capital in a fixed plant, the value of which public competition must seriously impair. Money put into such a plant cannot be withdrawn. It has been turned into lands, buildings, and apparatus of little value except for the purpose for which they were specially designed. While the legislative power may be so exercised as to subject such investments to loss by a diversion of the business, built up by means of them, into other channels, those to whom that power has been confided have an equal right, in granting new franchises, to take care to protect prior ones on the faith of which the recipients have put their funds beyond recall. See *Enfield Toll Bridge Co.* v. *Connecticut River Co.*, 7 Conn. 28, 48. States, as well as individuals, can recognize merely honorary obligations. *United States* v. *Realty Co.*, 163 U. S. 427.

The duty of purchasing established plants is thrown equally on all municipalities seeking to take advantage of the statute, and is owed equally to all corporations standing in a position like that of the plaintiff. While no man or set of men are entitled to demand exclusive privileges from the State, it may grant them, for proper cause and on equal

terms, to certain sets of men or classes of corporations. No corporation but a railroad company can run a railroad, and none but a gas company can supply the public with gas. The exclusiveness of the privilege which this suit was brought to enforce is a necessary incident of the fact that the plaintiff is the only chartered corporation of its kind having a plant in Norwich. If there were others there, they would have, under the statute, the same rights. That corporations formed for the same purposes under the general incorporation law, or individuals engaged in a similar business, would not have them, is of no importance. There was a legitimate reason for classifying chartered corporations by themselves, in this respect. In the case of each of them the State has determined, after special inquiry, that there was good cause for granting it a franchise, and if it has gone forward and established a plant, it has done it in reliance on its charter privileges, and on the natural probability that these would not be revoked or rendered valueless by the General Assembly without what should appear to that body to be proper cause. The equal protection of the laws is not denied by treating different classes of persons in a different way, if it be a way not inappropriate to the class, and the class be set apart from others on reasonable grounds. *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79, 111.

It is within the legislative power to establish a particular kind of administrative tribunal to decide a particular kind of questions, regarding the value of property to be appropriated to a public use, whether by a public or a private corporation, and the method and terms of such appropriation. *Bristol* v. *Branford*, 42 Conn. 321, 322; *Woodruff* v. *Catlin*, 54 id. 277, 295; *Woodruff* v. *New York & N. E. R. Co.*, 59 id. 63, 79. There is, at least, equal reason to justify the ruling of the Superior Court in upholding the right of the General Assembly to authorize its appointment of a commission clothed with powers of a similar nature as to property to be appropriated by a public corporation to aid it in discharging functions which it desires and the State permits it to assume, when the doings of such commission were to

be returned to the court for confirmation, and when no question of the propriety or legality of committing such functions to the defendant was raised by either party.

The city in the Superior Court opposed the appointment of the commission by a motion to dismiss, a demurrer, and an answer. In none of these papers was it claimed that the provisions of the statute requiring municipalities, voting to establish a lighting plant, to purchase any existing one owned by a chartered corporation, and providing for the appointment of such a commission in case of a disagreement as to the terms of sale, were unconstitutional. After the commission had reported, in a motion to erase the cause from the docket, the city gave as a reason for erasing it that, under the provisions of the constitutions of this State and the United States, the purchase could not be enforced by such a tribunal. The only grounds of objection, however, which were there taken and specified, were those which have been above examined and held to be insufficient. Whether there were or were not other grounds that might have been brought forward, of greater weight, we have no occasion to inquire, since on this appeal we may properly confine our determination to the errors assigned.

The plaintiff's claim rested upon the validity of the entire statute. The defendant attacked only so much of it as provides for the compulsory purchase of existing plants. As that provision is valid, we have no occasion to consider the constitutionality of the rest of the statute, since no question has been raised in that respect by either party.

The report of the commission, after stating the value of the plaintiff's plant (exclusive of supplies and materials for current use, the manner of valuing which the parties agreed on) to be $590,000, and that "neither the franchises nor the good will of the plaintiff have been valued, and they should not be sold," proceeded as follows:—

"The commission has based its valuation upon the fair market value of the gas and electric plants for the purposes of their use, including, as an element of value, the earning capacity of said plants, based upon the actual earnings which

were being derived from such use at the time of the final vote of said city, to wit, on the 2d day of June, 1902.

"In reaching said valuation, the commission has considered: the location of the plants with reference to the river, the railroad, and the community served by their distribution systems; the value of the land; the structural value of the buildings; the value of the machinery and all apparatus for producing gas or electricity; the distribution system of each of said plants; the present condition of the buildings, machinery, and distribution systems, their defects, the changes needed for their reasonable improvement, and the probable result of such changes as bearing upon the output of the plants; the expense of operation; and the opinions of the experts who testified. It has also considered that the plants are going concerns, and that their output has been increasing, and has also taken into account their earning capacity and their actual earnings at the time of said vote (making allowance for depreciation), and the fact that the plaintiff has an established business, built up at the risk of private capital, after experiments and changes during a long period, and has further considered the powers of the State, and its policy in dealing with public-service corporations.

"The commission deems the grounds of its valuation to be sufficiently stated, so that it is unnecessary to make separate rulings upon the various parts of the defendant's brief, as suggested during the argument.

"Said plants are subject to a mortgage for four hundred thousand dollars ($400,000), and bonds to that amount are outstanding, many of them in the hands of purchasers in good faith for value.

"The plaintiff filed a written request that the defendant be required to assume and pay the outstanding bonds, and that the plants be transferred subject to said mortgage.

"The defendant filed a written demand that said plants and all property affected by the adjudication of the commission be transferred 'free and clear of any mortgage or lien.'

"It did not appear from the evidence that said plants or

property are subject to any encumbrance or lien other than said mortgage.

" The commission hereby determines that said plants and property shall be sold by the plaintiff and purchased by the defendant subject to said mortgage, and that the payment to the plaintiff by the defendant shall be the value of said. plants and property already determined, to wit, five hundred and ninety thousand dollars ($590,000), plus the value of the supplies, materials, stock, tools, and other property of like nature, to be fixed as hereinbefore set forth, less the four hundred thousand dollars ($400,000) secured by said mortgage, with such interest thereon as may be unpaid at the time of the transfer."

In remonstrating against the confirmation of this report, the defendant set up two main grounds: first, that the valuation ought to have been confined to the bare physical plant; and second, that the conveyance ought not to be made subject to the mortgage.

The basis for determining the price, laid down in § 12 of the statute, was evidently intended, in case the parties failed to agree on the sum to be paid, to apply to a valuation by a special commission. It is claimed that in effect the commission, in this instance, put a value on the franchise and good will, although it excluded them in form. ‘

It would not have fulfilled its duty, had it estimated the sum to be paid in view only of what the lands, buildings, pipes, wires, and other apparatus were worth, considered as separate items. They were to be valued in view of their arrangement for and adaptability to the purposes for which they were provided, and of their earning capacity as a going concern, in ascertaining which special regard was, by the terms of the statute, to be paid to their actual earnings. *National Water Works Co.* v. *Kansas City*, 62 Fed. Rep. 853. The phrase in the statute, " based upon the actual earnings," at a certain date, does not signify that the earning capacity of the plant, which was to be considered " as an element of value," was to be appraised solely on the basis of such earnings. It would be obviously necessary to take other

considerations into account. The plant might have been strained to its utmost limit of productive power, and beyond any limit that could be steadily or safely maintained, in order to increase the apparent earnings of the company at a particular time. The real question was as to the amount of net profits then derived and derivable from the use of the plant. There might be defects in it fatal to the maintenance of earnings at the same rate, unless they were remedied. The remedies might be simple and cheap: they might be difficult and costly. All such matters it was proper for the commission to take into account. *Norwalk* v. *Blanchard*, 56 Conn. 461, 464. There is therefore nothing exceptionable in its statement that it considered the changes needed for the reasonable improvement of the plants and the probable results as bearing upon their output. It may be that it deemed such changes necessary to the maintenance of the present output. It may be that it thought that, if made, the present output could be maintained at less expense. The amount of the output was properly looked at in connection with the expense of operation. The net earnings of a producing plant are a more significant test of its value than the gross earnings.

It was also proper for the commission to pay regard to the fact that the plaintiff had an established business, built up after experiments and changes during a long period. *Gloucester Water Supply Co.* v. *Gloucester*, 179 Mass. 365, 60 Northeastern Rep. 977. This tended to strengthen the presumption that the actual earnings at the time of the city vote could be relied on as an important factor in determining the earning capacity of the plant. A manufacturer seeking to sell his works and anxious to enhance their apparent value when estimated at a particular day, might, by extraordinary efforts, get special orders to be filled on that day, which would give his operations a temporary and fictitious magnitude. It is only in case of an established business, based upon the use of well tested and long tested apparatus, perfected by many trials, experiments and changes, that the net earnings of a day are a fair index of the net

earnings of a year. The commission reports that it considered, in connection with these facts, that the plaintiff's business had been thus " built up at the risk of private capital." It indisputably had been so built up, and whatever had been sunk in experiments in order to secure and with the result of securing a good working plant was properly considered as entering to some extent into the value of that plant. *Nihil simul inventum et perfectum est.* The defendant itself invited the commission, in making its valuation, to take into account " the value, if any, of the physical plant in excess of the value or cost to purchase and install the several parts of a similar plant in similar condition, due to the fact that it is a connected, working whole, shown by experience to be capable of operating at a definite cost." The proof furnished by experience was thus plainly and properly stated to be of material importance.

It is objected that the commission, in reaching its valuation, considered the powers of the State, thus indicating a decision that the statute was constitutional; and also the policy of the State, thus indicating an attempt to construe the statute by its own opinion as to what that policy was, rather than by its own terms.

As the statute, so far as the defendant called it in question, was a constitutional one, it would be unimportant, if true, that the commission so considered it.

That it construed the statute in view of the policy of the State, rather than by its terms, the trial court has found not proven. If this averment in the remonstrance was true and was material, it could have been proved by calling the members of the commission as witnesses in its support. *New Milford Water Co.* v. *Watson*, 75 Conn. 237, 248. Their testimony was not offered, nor any other evidence as to this point. The objection fails, therefore, unless the statement in the report, that the policy of the State in dealing with public corporations was considered as bearing upon the valuation to be made, discloses an error of law, harmful to the defendant. This policy, in reference to public service corporations such as the plaintiff,

and in the situation of the plaintiff, was plainly apparent upon the face of the statute. The sections under which the commission was appointed to act were indisputably enacted to protect their property interests. The purpose or policy thus manifested the commission had a right to consider. In the absence of proof to the contrary, it is not to be presumed that it considered any other.

The defendant requested the commission to state specifically in its report what valuation it placed upon an "allowance for powers and policy of the State" as a part of the company's plant, and to specify separately each item of value which it included in the purchase price. This request having been denied, a motion to recommit the report with directions to add such particulars was filed in court, and denied.

There was no error in these rulings. The assumption that a price was set on the powers and policy of the State was obviously inadmissible. As respects the other items to which reference was made, it is enough to say that the valuation of anything in the nature of a connected and working whole must be made and regarded as an entirety. It would serve no useful purpose for those making such an estimate to specify the particular considerations leading up to the ultimate result. Rules of Court, p. 34, § 100. If improper subjects were taken into account, the remedy was by way of remonstrance. These same matters were thus brought up, but the defendant failed to support its allegations by proof.

In its answer to the remonstrance as to this point, the plaintiff alleged that the defendant especially invited the commission to consider the powers of the State and its policy in dealing with public-service corporations. Evidence was produced in support of this contention, and it is found by the trial court that the defendant did urge upon the commission that it was competent for the legislature to authorize municipal competition with the plaintiff, without providing for any compulsory purchase, or for compensation; that the statute worked no compulsion upon it in the

legal sense; and that it was incorporated four years after the statute was passed. Subsequently, on the hearing upon the remonstrance and answer, the defendant offered in evidence part of a brief submitted by the plaintiff to the commission, in which it was called upon to consider the powers and policy of the State with reference to muncipal competition with private ownership, under the claim that this would tend to prove that the commission considered these matters in the way in which the brief stated them. It was properly excluded. The evidence was of too remote and conjectural a character. It showed on its face that there was something better that could be offered, namely, the testimony of the members of the commission.

The plaintiff's plant was mortgaged in 1897 to a trust company of New York, to secure its negotiable bonds to the aggregate amount of $400,000, payable in 1927 and bearing interest payable semi-annually at the rate of five per cent. All these bonds have been issued. The city claimed before the commission, and by remonstrance against the confirmation of its report, that they were illegally issued and void, and that the mortgage was executed without legal authority.

There was no error in confirming the report, notwithstanding the commission denied the defendant's request that the property should be transferred to it free and clear of any mortgage or lien, and notwithstanding evidence was submitted to it in support of the claim of the city above stated, and also such as tended to show that the city could borrow money with which to pay off the mortgage bonds at a rate of interest less than that which they bore by one and a half per cent.

The plaintiff could not force its bondholders or their trustee to accept payment of the mortgage debt before it was due. The State itself could not impair the obligation of the contract. It could authorize the condemnation of the contract rights under the mortgage, on paying just compensation for the loss of the advantage, if any, incident to such an investment in a long time five per cent. bond. The com-

mission, however, had no jurisdiction to institute or enter-
tain condemnation proceedings. No application was made
by either party to the Superior Court to assume the exer-
cise of such a power, and it is therefore unnecessary to in-
quire whether such an application could have been sup-
ported.

Under these circumstances the commission could take no
other course than that which it adopted, unless it found the
bonds or mortgage to be invalid. Although evidence that
they were invalid was submitted to it, the report states in
effect that they were valid. It followed that the lien could
not be displaced by the sale.

The city sought, under its remonstrance, to have the ques-
tion of their validity retried in the Superior Court on a
stenographer's report of the evidence and exhibits introduced
before the commission which bore upon it, in connection with
the plaintiff's charter. The evidence thus offered was prop-
erly excluded. The issue was one to be determined, in the
language of the statute, by the "superior court through its
special commissioner." It therefore could not be determined
by the Superior Court without the intervention of the com-
mission. Still less could it be determined on a remon-
strance to the confirmation of the report of the commission,
upon a claim that the report was against the weight of evi-
dence.

It is claimed that under General Statutes, § 693, certain
depositions used before the commission were made admis-
sible in support of this ground of remonstrance. That sec-
tion refers solely to appellate tribunals, which in this instance
the Superior Court was not; nor was it intended to change
the rules affecting the relevancy of evidence.

The Superior Court also properly declined to admit, in
support of the remonstrance, the stenographer's report of all
the evidence introduced before the commission on the ques-
tion of values. This was offered to show that the commis-
sion, in valuing the property at $590,000, must have taken
into account considerations which were legally inadmissible.
The claim of the city in making the offer was that there

was no testimony before the commission warranting a valuation of over $420,000, in addition to a gross allowance, which on the hearing the city had admitted might fairly be made, of not over $60,000, by reason of the fact that the plant was that of a going concern. The sum at which this allowance, if made, should be fixed, was evidently a matter as to which a difference of judgment between reasonable men might fairly exist. The same state of facts which might lead one to deem $60,000 too much might to others seem to call for a much larger addition. The commission viewed the plant, and may thus have derived impressions that were decisive. The evidence thus put before it could not be put before the Superior Court. This is enough to justify the ruling, without reference to other grounds urged in its support.

It is made a reason of appeal that the supplies and materials that may be on hand for current use at the date of the transfer of title, which the city is required, under the terms of the report which were confirmed by the judgment, to purchase, are to be bought subject to the mortgage, although not in existence when the mortgage was executed. This question was not raised before the Superior Court, and therefore need not be considered here. It may, however, be observed, that the form of the bill of sale prescribed in the judgment purports to subject what is sold to the mortgage, only " so far as said mortgage covers or includes any of such personal property."

There is but one other ground of appeal that calls for particular consideration. This is, that the judgment goes beyond a confirmation of the report and lays new obligations upon the city in addition to those which the commission decided to be proper.

The Superior Court had power, by § 14 of the statute, to " set aside the report in whole or in part, as the justice of the case may require," but, if this were done, the questions determined by the part set aside were to be sent to another commission for settlement. It was plainly the intent of the General Assembly that every matter submitted to the

commission should be decided by it or by some other commission, subject only to the approval of the court. The function of the final judgment was to make the work of the commission operative. For that purpose it was within the jurisdiction of the court, in framing the judgment, to provide for the due fulfilment of the terms and conditions of sale laid down in the report. This is implied in § 14 of the statute, which authorizes the issue of equitable process, "to compel compliance with the final decree of said court." A duty of compliance presupposes the existence of some requirement to be fulfilled.

There is nothing exceptionable in the provision in the judgment appealed from, that the time of the sale and transfer should be at the expiration of ninety days from its rendition, since that was on the day of the final acceptance of the report. The report was finally accepted when the Superior Court accepted it. That fixed the date of acceptance for all the purposes of the cause, subject to the right to postpone it by a subsequent extension of time in case of an appeal to this court and an affirmance. Rules of Court, p. 33, § 97.

The court also properly settled the particular form of the warranty deed and bill of sale, and the date and manner of their delivery. The forms prescribed pursue, in legal effect, the terms of the report. That all the personal property, including the supplies and materials on hand for current use were to "be transferred" by the delivery of the bill of sale, without any manual tradition, was sufficiently implied by the terms of the report.

Nor was there error in liquidating the precise amount of the purchase money to be paid. The report of the commission had fixed it (except as to that for the supplies and materials, concerning which the parties had agreed on a mode of valuation) at $590,000, "less the $400,000 secured by said mortgage, with such interest thereon as may be unpaid at the time of the transfer." This report was made in April, 1903. On the hearing as to its confirmation in the following autumn, the parties agreed that interest had been paid in

full to July 1st, 1903. Another interest payment would become due, by the terms of the mortgage bonds, on January 1st, 1904. The date fixed for the sale was January 6th, 1904. Prior to that day, the plaintiff, if it fulfilled its contract obligations, would have to pay $10,000, and on that day five days' interest more would have accrued, which the report charged upon the city. It was simply giving due effect to the terms of the report to insert in the judgment the precise sum which the city was to pay on January 6th; and it is not claimed that in making it $179,666.66, there was any mistake in computation.

There was no error in ordering the issue of execution for this sum at the expiration of the ninety days. It was a natural incident of a money judgment, and the report, when confirmed, had the effect of one for that amount. It is true that the provision that execution issue on that day is unqualified, but it is always implied in an order of that nature that execution will not be issued if it appear that the debt has been paid.

For the same reason it was not erroneous to adjudge that the plaintiff recover of the defendant, after the transfer, the value, when ascertained, of the supplies and materials, as to the mode of valuing which an agreement had been made.

There is, however, one error which is well assigned in this connection.

The plaintiff especially requested the commission that the defendant be required to assume and pay the outstanding mortgage bonds; but the report contains no such provision.

The sale of an equity of redemption in mortgaged property casts on the purchaser no obligation to pay the mortgage debt. That remains, as before, solely the duty of him whose debt it was. The purchaser may, indeed, be forced to pay it, if he would avoid a foreclosure, but the mortgage creditor has no right of recovery against him, and can only collect his debt at his expense by enforcing his security.

The report simply determined that the sale should be subject to the mortgage. The judgment, after, in paragraphs fourth and fifth, assuming to make it subject to the mort-

gage and the mortgage indebtedness, especially directs, in paragraph ninth, "that if the said petitioner shall in the future at any time or times pay any part of the principal or interest due or to become due upon said mortgage and bonded indebtedness of four hundred thousand dollars ($400,000) said petitioner shall after the expiration of ninety days from the rendition of this judgment recover from time to time of said city such sum or sums so paid, with interest at the rate of six per cent per year from the time of any such payment made after ninety days from the final acceptance or confirmation of the report of said special commission." This provision transcended the jurisdiction of the court, by prescribing new conditions of sale authorized neither by the report of the commission nor by the statute under which it was constituted. The plaintiff remains absolutely liable to the mortgage bondholders. They can compel it to pay them what it agreed and as it agreed. It can pay them, voluntarily, if it thinks fit. Upon making any such payment, when due and payable, the judgment gives it an absolute right to claim immediate reimbursement from the city treasury. This would be so, even if the city had abandoned the use of the mortgaged plant and constructed another. Here there is error. If the plaintiff should be hereafter obliged to pay anything to its bondholders, it must look solely to its equitable charge upon the mortgaged property for indemnity.

This provision is, however, clearly separable from the rest of the judgment, and may be struck out without affecting the rest.

There is error in the insertion, in the fourth paragraph of the judgment, of the words " and said mortgage indebtedness ; " and in the insertion in the fifth paragraph of the words "and bonded indebtedness ; " and in the ninth paragraph ; and said words above quoted from the fourth and fifth paragraphs, and the whole of the ninth paragraph, are struck out of said judgment and set aside, and the residue of said judgment is affirmed, and the cause remanded, with directions to modify it by substituting a new date for the time of the sale, not later than ninety days from the date of

such modification, and by such alterations in paragraphs fourth, fifth, seventh, eighth and tenth of said judgment as may be required by such postponement of the time of the sale.

Costs in this court will be taxed in favor of the appellant.

In this opinion the other judges concurred.