MARIE GARRETT *v*. STATE OF CONNECTICUT

SUPERIOR COURT     HARTFORD COUNTY     FILE No. 110794

Memorandum filed March 12, 1958.

*Samuel Steinberg,* of Hartford, for the plaintiff.

*John J. Bracken,* attorney general, and *Raymond J. Cannon,* assistant attorney general, of Hartford, for the defendant.

ALCORN, J. The plaintiff has brought suit to recover damages for personal injuries allegedly sustained through the negligence of the state in maintaining a defective pump handle in a public park. The action is based on Special Acts 1957, No. 489, entitled "An Act Authorizing Marie Garrett to Sue the State." 28 Spec. Laws 559. So far as now material, the act provides: "Permission is granted to Marie Garrett of Hartford to bring an action against the state to recover damages alleged to have been caused by reason of a defective pump handle at Stratton Brook State Park in Simsbury."

In its answer the state pleads, as a second special defense, that the special act is unconstitutional in that it violates article first, § 1, and article second of the constitution of Connecticut, and § 1 of the fourteenth amendment to the constitution of the United States. The plaintiff demurs to this defense upon the ground that the state may grant special privileges to specified individuals without violating the constitutional guarantee of equal protection of the laws, where sufficient reason exists; that long-settled legislative usage is of controlling weight; and that this special act is not an isolated instance but has been common legislative practice. The second and third reasons assigned must be read together. They are

ineffective as grounds of demurrer because they improperly attempt to import additional facts into the record. *State ex rel. Moriarty* v. *Smith,* 72 Conn. 572, 574; *Ryan* v. *Knights of Columbus,* 82 Conn. 91, 92; *Bedard* v. *Cunneen,* 111 Conn. 338, 341.

The plaintiff bases its first reason of demurrer on *Sanger* v. *Bridgeport,* 124 Conn. 183, which sustained the constitutionality of a special act validating an otherwise defective notice prerequisite to a suit against a city. That case presented a very different issue from the present case for, as the court said (p. 189), " 'this act does not enlarge the plaintiff's claim in any manner.' The rights which she had flowed from the statute (General Statutes § 1420 [Rev. 1930]) and not from this special act, which 'merely removed the bar to suit . . . —permitting the plaintiff to assert whatever rights [she] had— there being nothing added to such rights by the act itself.' "

Furthermore, the plaintiff relies, for this ground of demurrer, upon the sentence lifted from the opinion in the *Sanger* case, supra, 189, that "[t]he State may grant privileges to specified individuals without violating any constitutional principle in cases where sufficient reason exists." If this statement is to save the plaintiff's case it can only do so upon a showing that this is a case "where sufficient reason exists." If that condition is to be made to appear, it could only be as the result of a trial. It cannot be found as a matter of law on demurrer. Consequently, the first ground of demurrer must also be found insufficient.

What has been said sufficiently disposes of the demurrer. Further reasons exist, however, for permitting the defense in this case.

No decision in this state has been cited or discovered which furnishes a controlling precedent for

the constitutional issue presented by the defense. A South Carolina case, *Sandel* v. *State,* 115 S.C. 168, furnishes the basis for a note in 13 A.L.R. 1276, 1280, concerning statutes permitting individuals to sue the state. In that case suit was permitted the administrator for damages arising out of the death of a child killed by impure vaccine. The South Carolina court later, however, expressly overruled the *Sandel* decision in *Sirrine* v. *State,* 132 S.C. 241, upon the ground that the premise on which the *Sandel* case was decided was wrong. That premise was that the plaintiff's right existed at common law and the act only removed the bar of the state's immunity to suit. In the *Sirrine* case the court concluded that no right existed in the plaintiff because the state was not legally liable and consequently there was no bar to suit to be removed. See also *Commonwealth* v. *Masden,* 295 Ky. 861; note, 169 A.L.R. 105, 109.

The Connecticut case most nearly approximating the present case is *Tolisano* v. *State,* 19 Conn. Sup. 266, in which a special act allowing a convict to sue the state for damages for illegal detention was upheld. The court, recognizing (p. 270) that "[t]his is a point of some difficulty," declined to disturb the legislative action because it could not say that the General Assembly could not reasonably decide that it was, under the particular circumstances disclosed, recognizing a merely honorary obligation under the language of *Norwich Gas & Electric Co.* v. *Norwich,* 76 Conn. 565, 572. Neither case involved alleged negligent injury, and the features of each were distinct from those of the present case.

The *Norwich Gas & Electric Co.* case, while it uses (p. 572) the sometimes quoted language "[s]tates, as well as individuals, can recognize merely honorary obligations," used that language in a context not applicable to the present case. The court was there considering the constitutionality of an act which

provided the procedure for the compulsory purchase by municipalities of the plants of private utility companies in cases where the municipality was undertaking the utility business. The decision was premised upon the fact that the statute under consideration applied equally to all municipalities and to all private corporations in a like situation. Such a statute bears no similarity to the statute involved in the present case, which confers on a specified individual, and no others, the right to sue the state. The quoted language from the *Norwich* case, moreover, was used in connection with the fact that both parties there involved were artificial creatures of the state and the purpose of the legislation was to cause no loss to previously chartered private corporations by reason of later allowing municipal corporations to exercise the same functions. The case is authority only for the proposition that the equal protection of the laws does not prevent classification so long as it is reasonable, not arbitrary, and rests on a distinction having a fair and substantial relation to the object sought to be accomplished. *State v. Hurliman,* 143 Conn. 502, 506; *State v. Gordon,* 143 Conn. 698, 706.

Both the *Tolisano* and *Norwich* cases, supra, recognize the proposition that "[t]he General Assembly, within the broad powers granted to it by the constitution, may recognize obligations resting on equitable considerations and good conscience even where the state is not legally bound." *Carroll v. Socony-Vacuum Oil Co.,* 136 Conn. 49, 56. That maxim can hardly be construed to include, however, a claim such as the one in the present case, which asserts a legal liability in negligence.

Article first, § 1, of the constitution of Connecticut declares "[t]hat all men when they form a social compact, are equal in rights; and that no man, or set of men are entitled to exclusive public emoluments

or privileges from the community." That guarantee has a meaning equivalent to that found in § 1 of the fourteenth amendment to the constitution of the United States, providing, in part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." *State ex rel. Higgins* v. *Civil Service Commission*, 139 Conn. 102, 105; *State ex rel. Brush* v. *Sixth Taxing District*, 104 Conn. 192, 195; *Cyphers* v. *Allyn*, 142 Conn. 699, 703; *Proctor* v. *Sachner*, 143 Conn. 9, 17.

"The equal protection of the laws is accorded when all persons similarly situated are accorded 'equal protection under the law in the enjoyment of rights belonging to all.' " *State ex rel. Brush* v. *Sixth Taxing District*, supra, 200. Consequently, a statute which makes a special exception without basis for its support is unconstitutional. *Montgomery* v. *Branford*, 107 Conn. 697, 708; *Montgomery* v. *Branford*, 109 Conn. 388, 392. On the other hand, a law uniform in operation is not rendered invalid merely because of the limited number of persons who will be affected by it. *Walp* v. *Moar*, 76 Conn. 515, 521; *New York, N.H. & H.R. Co.* v. *Offield*, 77 Conn. 417; *Norwich Gas & Electric Co.* v. *Norwich*, 76 Conn. 565, 572.

The statute in the present case makes no pretense of being of general application. Regardless of how many persons may have sustained negligent injury similar to the plaintiff's, this statute purports to permit the plaintiff and the plaintiff alone to seek redress. "No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual." *State ex rel. Higgins* v. *Civil Service Commission*, supra, 106.

While every proper presumption and intendment must be made in favor of the legislation and it must be sustained unless its invalidity appears beyond reasonable doubt; *State* v. *Bassett*, 100 Conn. 430,

433; *Beach* v. *Bradstreet,* 85 Conn. 344, 349; *Gionfriddo* v. *Windsor,* 137 Conn. 701, 705; *Amsel* v. *Brooks,* 141 Conn. 288, 294; *State* v. *Gordon,* 143 Conn. 698, 703; nevertheless, the defense here demurred to is properly pleaded and must be allowed to stand.

"Cooley, in Constitutional Limitations, Vol. 2 (8th. Ed.) 809, says: 'The legislature may suspend the operation of the general laws of the State; but when it does so the suspension must be general, and cannot be made for individual cases or for particular localities; . . . but everyone has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not, be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments.' " *Silver* v. *Silver,* 108 Conn. 371, 383.

*Wheeler's Appeal,* 45 Conn. 306, 315, is often quoted for the proposition that "long continued legislative usage is of controlling weight upon the question of the constitutionality of an act," as already alluded to. However, in *Beach* v. *Bradstreet,* 85 Conn 344, 350, the court says: "Some years ago a writer in the Harvard Law Review (Vol. 12, p. 316) presented the results of his examination of the legislation of Massachusetts for the preceding twenty-five years, and made it plain that there had been in that period hundreds of instances involving hundreds of thousands of dollars of the public funds voted in gratuities clearly contrary to the Constitution, although few instances had been tested in the courts. In the instances where the vote of gratuities had been before her courts, they had sturdily upheld the Constitution. Massachusetts' experience does not stand alone among the States." May it not be that if "long continued legislative usage" of the sort claimed

here has, in fact, existed in Connecticut, it has been only because "few instances had been tested in the courts"? In *State* v. *McCook,* 109 Conn. 621, 641, "long settled and established practice" was urged without avail to justify the late signing of legislative acts by the governor. While such a practice is not binding on the court, it is " 'entitled to great regard in determining the true construction of a constitutional provision the phraseology of which is in any respect of doubtful meaning.' " *State* v. *McCook,* supra, 641; *State ex rel. Corbett* v. *South Norwalk,* 77 Conn. 257, 264. Couched in that phraseology, the proposition does not assume the breadth claimed for it on this demurrer or in the less precisely phrased language of some of the decisions.

The demurrer is overruled.