VÍCTOR ROSARIO CARTAGENA, ETC., demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrido.

*Número:* R-72-23      *Resuelto:* 11 de septiembre de 1973

A. *Rivera Valdivieso*, abogado del recurrente; *J. F. Rodríguez Rivera, Procurador General Interino*, y *Adolfo Negrón Cruz, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Un día del año 1961 un perro pastor alemán atacó y causó serias lesiones físicas a una niñita. Sus padres demandaron a Víctor Rosario Cartagena, dueño del perro, y a United Benefit Fire Insurance Company, a quien en adelante nos referiremos como United Benefit, su compañía aseguradora, en reclamación de daños y perjuicios. Obtuvieron sentencia a su favor en septiembre de 1965 que condenó a dichos demandados a indemnizarles en la cantidad de $9,500. La sentencia se convirtió en final y firme y al tratar de cobrarla contra la compañía aseguradora, cuya póliza respondía por el dueño del perro hasta un máximo de $10,000, encontraron los demandantes que la compañía estaba en liquidación por quiebra por el Departamento de Seguros del estado de Nebraska, bajo cuyas leyes se había organizado. Procedieron entonces a ejecutar la sentencia contra el asegurado y dueño del animal, Rosario Cartagena, mediante el embargo de su residencia. ([1])

Posteriormente y a instancias de Rosario Cartagena, la Asamblea Legislativa de Puerto Rico aprobó su resolución conjunta número 20 de 8 de abril de 1971 autorizándole a demandar al Estado Libre Asociado de Puerto Rico en daños y perjuicios. Dicha resolución conjunta lee como sigue:

"Para autorizar al señor Víctor Rosario Cartagena a demandar al Estado Libre Asociado de Puerto Rico por daños y perjuicios; y para otros fines.

---

([1]) De los autos ante nos no surge si se completó el trámite de ejecución mediante la venta en subasta de la propiedad, o si Rosario Cartagena hizo efectivo el importe de la sentencia.

### EXPOSICIÓN DE MOTIVOS

Considerando que en el año 1961 el señor Víctor Rosario Cartagena era dueño de un perro pastor alemán y había tomado un seguro de $10,000 con la Compañía United Benefit Fire Insurance Company de Omaha Nebraska, que estaba autorizada a hacer negocios en Puerto Rico para cubrir los daños que dicho perro pudiera ocasionar a terceros.

Considerando que el Comisionado de Seguros de Puerto Rico le permitió a dicha compañía aseguradora el mantener su reserva en la ciudad de Omaha, estado de Nebraska.

Considerando que en enero 31, 1961 el perro del señor Rosario Cartagena atropelló a la niña Carmencita Acosta produciéndole daños de consideración.

Considerando que los padres de la niña perjudicada demandaron a la compañía aseguradora y dueño del perro en daños y perjuicios y obtuvieron; [sic] sentencia por nueve mil quinientos dólares, en el caso civil núm. 62-373, del Tribunal Superior de San Juan, Puerto Rico.

Considerando que cuando fue firme la sentencia los demandantes trataron de cobrar a la compañía aseguradora, ya que dicha sentencia quedaba dentro de los límites de la póliza, y encontraron que dicha compañía estaba en proceso de liquidación dentro de un procedimiento de quiebra en la ciudad de Omaha, estado de Nebraska.

Considerando que los demandantes, procedieron a embargar la residencia del señor Rosario Cartagena para cobrarse dicha sentencia.

Considerando que el Comisionado de Seguro [sic] hizo mal uso de su discreción el permitir que dicha compañía aseguradora mantuviera su reserva fuera de Puerto Rico y al así hacerlo, produjo daños al señor Víctor Rosario Cartagena.

Considerando que la ley que autoriza demandar al Estado Libre Asociado de Puerto Rico excluye específicamente los casos en que hubiera mal uso de discreción por parte de un funcionario público y por ello hace falta legislación que permita al señor Víctor Rosario Cartagena, demandar al Estado Libre Asociado de Puerto Rico por los daños sufridos.

Considerando que por haber transcurrido más de un año desde que se dictó sentencia se hace necesaria legislación para

autorizar al señor Víctor Rosario Cartagena a · demandar al Estado Libre Asociado de Puerto Rico.

Resuélvese por la Asamblea Legislativa de Puerto Rico:

Sección 1.—Autorizar al señor Víctor Rosario Cartagena a demandar en los tribunales estatales al Estado Libre Asociado de Puerto Rico, en daños y perjuicios.

Sección 2.—Esta resolución comenzará a regir inmediatamente después de su aprobación".

En virtud de la autorización conferídale, Rosario Cartagena radicó demanda contra el Estado Libre Asociado de Puerto Rico ante el Tribunal Superior, Sala de San Juan, alegando como razón de pedir: "10. Que el Comisionado de Seguros hizo mal uso de su discreción al permitir que la compañía aseguradora mantuviera su reserva fuera del Estado Libre Asociado de Puerto Rico y al así hacerlo produjo daños a la parte demandante que no pueden ser compensados adecuadamente por una suma menor de $150,000.00." (Párrafo 10 de la demanda.)

El Estado Libre Asociado de Puerto Rico solicitó la desestimación de la demanda por los siguientes fundamentos: (1) "no aduce hechos constitutivos de causa de acción que amerite la concesión de remedio legal alguno a favor de la parte demandante y en contra de la parte compareciente;" (2) prescripción de la acción; y, (3) falta de jurisdicción "por no haber la parte demandante cumplido con los requisitos de la Ley 104 de 1955."

El tribunal a quo, luego de oír a los abogados de las partes el 8 de octubre de 1971, concedió término para que radicaran memorandos simultáneos. El Estado Libre Asociado de Puerto Rico radicó el suyo. El abogado del demandante no radicó memorando ni compareció en ninguna de las fechas posteriores señaladas para la continuación de la vista sobre la moción de desestimación.[2] En la vista celebrada el 8 de

---

[2] No dio explicaciones para no radicar su memorando ni para su incomparecencia, excepto para la primera de dichas fechas en que se

octubre el tribunal admitió, a ofrecimiento del demandante, copia de la resolución conjunta número 20 que nos ocupa. Con su memorando escrito el Estado radicó una serie de documentos expositivos de todo el trámite seguido por el Comisionado de Seguros de Puerto Rico para autorizar a United Benefit a vender seguros en Puerto Rico. El demandante no objetó la admisión de dichos documentos. Con vista de todo ello el tribunal a quo dictó sentencia desestimando la demanda. No conforme, el demandante Rosario Cartagena recurrió ante nos. Expedimos auto de revisión.

La sentencia del tribunal recurrido no expone en cuál de los fundamentos aducidos en la moción de desestimación se basó para desestimar la demanda. El demandante-recurrente asume que pudo basarse en uno o en cualquiera de ellos y argumenta su caso considerando las tres proposiciones. Señala que en cualquiera que se basara la sentencia, sería errónea. Para resolver este recurso, nos basta determinar si a base de alguno de los razonamientos presentados por el Estado procedía que se desestimara la demanda. Hemos llegado a la conclusión de que por el primero de dichos fundamentos así procedía y que fue correcta la decisión del tribunal a quo. [3] Se basa dicho fundamento en la carencia de causa de acción.

Aunque la redacción de la demanda es imprecisa en cuanto a la razón de pedir, su génesis tendría que descansar en el hecho de que un funcionario del Estado Libre Asociado de

excusó por teléfono porque estaba en Cabo Rojo. Es menester señalar que los abogados, como funcionarios del tribunal, deben dar ejemplo de respeto, consideración y cortesía. Constituye práctica indeseable desatender el deber de radicar un memorando que le ha sido solicitado, sin ofrecer excusas para ello. La incomparecencia a una vista, sin aviso previo, es igualmente desconsiderado para con el tribunal y para con la parte adversa y su representación profesional, y merece nuestra reprobación. *Cf. Disdier Pacheco v. García*, 101 D.P.R. 541 (1973).

[3] En la vista del 8 de octubre de 1971 el Estado desistió del fundamento de prescripción como base de su moción de desestimación, por ser evidente que por la resolución conjunta número 20 se renunció a dicha defensa. El fundamento ·basado en el incumplimiento del requisito de notificación de la Ley Núm. 104 de 1955 es por demás frívolo.

Puerto Rico—el Comisionado de Seguros—actuara culposa o negligentemente. Tendría que basarse la reclamación en los Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142, respectivamente. El primero impone sobre el que por su culpa o negligencia causa daño a otro, la obligación de reparar el daño. El segundo hace exigible dicha obligación contra el Estado, al que hace "responsable en este concepto en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular." Esta responsabilidad subsidiaria del Estado está protegida y limitada por la Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. secs. 3077 a 3084. La Sec. 3081, en lo aquí pertinente, lee así:

"Nada en las secs. 3077 a 3084 de este título ni en la sec. 5142 del Título 31 autoriza las acciones por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado:

(a) en el cumplimiento de una ley o reglamento, aun cuando éstos resultaren ser nulos;

(b) en el desempeño de una función de carácter discrecional, aun cuando hubiere abuso de discreción;

(c) .      .      .      .      .      .      .      .

.      .      .      .      .      .      .      .

(f) .      .      .      .      .      .      .      ."

La resolución conjunta número 20 puede considerarse un buen modelo de legislación. Su parte dispositiva se limita a dos secciones. La primera autoriza al señor Víctor Rosario Cartagena a demandar al Estado Libre Asociado de Puerto Rico, sin más. La segunda dispone que la resolución tendrá vigencia inmediata. Es en su exposición de motivos donde encontramos cuál fue el alcance que la Legislatura le quiso dar a la autorización que confirió al demandante-recurrente. Sabido es que la exposición de motivos o preámbulo no forma parte esencial de la ley y por tanto no puede ampliar o conferir poderes. *Molini* v. *Registrador*, 52 D.P.R. 360, 362, (1937). No obstante, aun dándole vigencia al preámbulo de

la resolución conjunta como si fuera parte dispositiva de la misma, es inescapable la conclusión de que la demanda no podía prevalecer.

Al leer el preámbulo de la resolución conjunta número 20 encontramos que el legislador, para hacer viable la reclamación contra el Estado, privó a éste de la defensa de que el Comisionado de Seguros actuara en el desempeño de una función discrecional, y de la defensa de prescripción. Véanse los últimos considerandos de la resolución antes transcrita. Pero partió el legislador, como veremos, de una base factual equivocada cuando expresó lo siguiente en el antepenúltimo considerando:

"Considerando que el Comisionado de Seguros hizo mal uso de su discreción al permitir que dicha compañía aseguradora mantuviera su reserva fuera de Puerto Rico y al así hacerlo, produjo daños al señor Víctor Rosario Cartagena."

El Comisionado de Seguros no ejerció discreción alguna al no requerir de la corporación United Benefit que mantuviera una reserva o depósito en Puerto Rico. Meramente cumplió con un mandato expreso de la ley. El Art. 3.130 del Código de Seguros de Puerto Rico (26 L.P.R.A. sec. 313) dispone como sigue:

"(1) Ningún asegurador extranjero organizado de acuerdo con las leyes de un estado de Estados Unidos podrá ser autorizado a concertar seguros en Puerto Rico a menos que deposite y mantenga en depósito activo por un valor no menor que el monto del capital pagado, en caso de un asegurador por acciones, o de los fondos excedentes, en caso de un asegurador mutualista, recíproco o del plan del Lloyd, según se requiere que se mantenga para tal clase o clases de seguros a otorgarse en Puerto Rico, no obstante la disposición contenida en la sec. 304, párr. (2).

(2) El depósito, entre otros propósitos razonables de protección de asegurados y acreedores, será para la protección de todos los tenedores de pólizas del asegurador o para todos los tenedores de pólizas y acreedores en Puerto Rico.

(3) El depósito deberá hacerse fiduciariamente ante el Secretario de Hacienda del Estado Libre Asociado de Puerto Rico, por conducto de la oficina del Comisionado, excepto que éste, con sujeción a las disposiciones de la sec. 335 (disposición sobre reciprocidad) *aceptará, en lugar de un depósito o parte del mismo, en Puerto Rico, con la aprobación, en cuanto a formalidades, de dicho certificado por el Secretario de Justicia, el certificado del funcionario público que tenga la superintendencia de seguros en un estado, demostrativo de que dicho asegurador mantiene un depósito fiduciario o parte igual del mismo en dicho estado para los fines declarados en el párrafo (2), si el total de lo depositado en Puerto Rico y lo evidenciado por dicho certificado o certificados asciende a una suma no menor que la requerida bajo el párrafo (1).*

(4) El activo que se deposite en Puerto Rico será administrado según se dispone en el capítulo 8 de este título." (Énfasis nuestro.)

Bajo el Art. 3.160 de dicho Código (26 L.P.R.A. sec. 316) se prohíbe a un asegurador extranjero a contratar seguros en Puerto Rico a menos que tuviere y mantuviere invertida determinada suma de dinero en valores del Estado Libre Asociado de Puerto Rico o de sus municipios, u otros bonos u obligaciones de entidades puertorriqueñas declaradas elegibles por el Gobernador. [4] La prueba documental obrante en los autos originales de este caso demuestra que se cumplieron a cabalidad los requisitos de los Arts. 3.130 y 3.160 del Código de Seguros. Por tanto, el Comisionado no tuvo alternativa y acató la Ley.

---

[4] Dicho artículo lee:

"(1) Ningún asegurador extranjero será autorizado a contratar seguros en Puerto Rico a menos que tuviere y mantuviere invertida en los valores designados en el apartado (2) de esta sección una suma no menor de la cuarta parte del capital requerido, en el caso de un asegurador por acciones, o del excedente, en el caso de un asegurador mutualista, recíproco o del plan del Lloyd, según se indica en la sec. 309 para la clase o clases de seguros a otorgarse en Puerto Rico.

"(2) Para los fines de esta sección, sólo los siguientes valores serán inversiones elegibles:

(a) Bonos del Pueblo de Puerto Rico, el Estado Libre Asociado

Dicha prueba es elocuente demostración del celo y diligencia desplegados por el Comisionado de Seguros en el descargo de su responsabilidad. Investigó la condición económica de United Benefit para asegurarse de que su depósito en su estado de origen cumplía los requisitos del inciso (1) del Art. 3.130 del Código de Seguros, y de que, según lo exigen el inciso (3) de dicho artículo y el Art. 3.160, tenía y mantenía invertida en valores del Estado Libre Asociado y sus instrumentalidades una suma no menor de la cuarta parte del capital requerido bajo el citado inciso (1). En consecuencia de ello y en cumplimiento del inciso (3) mencionado aceptó originalmente, y para la renovación de la autorización dada a United Benefit cada año, certificados del Director de Seguros del estado de Nebraska como el que a continuación se relaciona y que en lo pertinente lee: "Yo, John H. Binning, Director de Seguros, certifico por la presente que la United Benefit Fire Insurance Company, organizada bajo las leyes de Nebraska y autorizada a hacer transacciones en. el negocio de seguros en este estado, tiene la cantidad de $630,000 invertida y depositada en el Departamento de Seguros del Estado de Nebraska para la protección de sus asegurados y acreedores en los Estados Unidos, *incluyendo el Estado Libre*

---

de Puerto Rico o sus municipios, para el pago de los cuales se hubiere empeñado la buena fe y el crédito del Pueblo de Puerto Rico o el Estado Libre Asociado de Puerto Rico.

(b) Bonos u otras obligaciones de entidades puertorriqueñas, públicas o privadas, que el Gobernador de Puerto Rico, en sus. reglamentos, declarare elegibles como garantía colateral para fondos públicos.

"A solicitud del asegurador el Comisionado podrá, sin embargo, dejar sin efecto el requisito de esta sección, en cuanto a dicha inversión o parte de la misma, durante el período que el Comisionado no considere razonablemente factible para que el asegurador haga dicha inversión, debido a la carencia de valores de la clase aquí requerida.

"(3) El Comisionado proveerá a los aseguradores de los formularios requeridos para evidenciar dicha inversión."

*Asociado de Puerto Rico,* como sigue: . . . .(⁵) (Traducción nuestra, énfasis suplido.)

En un despliegue adicional de celo en el cumplimiento de su deber de proteger los derechos de los asegurados y acreedores de compañías de seguros organizadas en los Estados Unidos que solicitasen hacer negocios en Puerto Rico, y obviamente preocupado por el riesgo que necesariamente implica conceder licencia a un asegurador que mantiene su reserva fuera de Puerto Rico, el Comisionado consultó al Secretario de Justicia respecto de sus prerrogativas bajo el Código de Seguros. En una extensa opinión fechada el 10 de septiembre de 1963, luego de analizar los alcances del tantas veces citado Art. 3.130, concluye el Secretario de Justicia señalándole al Comisionado que: "[En] los casos que exista reciprocidad con otros estados y el asegurador mantiene un depósito en el estado, que protege en todo o en parte, a los tenedores de pólizas o acreedores en Puerto Rico, y así se hace constar en certificación del funcionario público encargado de los seguros del estado en cuestión, el Secretario de Hacienda, según los términos del inciso (3), *está obligado* a aceptar el certificado, *y no tiene discreción* para exigir el depósito en Puerto Rico si el asegurador cumple con los demás requisitos de ley. De otra manera se desvirtuaría la intención del artículo, que es, a nuestro juicio, ofrecer al asegurador extranjero, a cambio de beneficios similares a los aseguradores del país que operen en los Estados Unidos, las mismas facilidades." Termina la opinión del Secretario de Justicia diciendo: "Es evidente que el Comisionado de Seguros tiene amplios poderes para administrar el negocio de seguros en Puerto Rico, pero el lenguaje y los propósitos que persigue el inciso (3) no dan

(⁵) A continuación de "como sigue" se detallan todos los valores depositados, ascendentes a $630,000, de cuyos valores la suma de $230,000 aparece invertida en bonos del Estado Libre Asociado y de la Autoridad de las Fuentes Fluviales de Puerto Rico. Esta cantidad, como en todos los certificados, siempre excedió del mínimo requerido por el Art. 3.160, 26 L.P.R.A. 316.

margen a otra interpretación que no sea la que hemos expuesto."

■ El Art. 6 de la Ley Núm. 104, 32 L.P.R.A. sec. 3081, citado supra, expresamente niega autorización para demandar al Estado por daños y perjuicios por acto u omisión de un funcionario "en el cumplimiento de una ley o reglamento, aun cuando éstos resultaren nulos." La resolución conjunta número 20 no dejó sin efecto, para el caso particular del señor Rosario Cartagena, esa disposición.

Pasamos a considerar si la resolución conjunta número 20 puede tener el efecto de una renuncia por parte del Estado Libre Asociado a todas las posibles defensas a que tendría derecho bajo la Ley Núm. 104 de 1955, y si lo expresado en su exposición de motivos respecto de que el Comisionado de Seguros "hizo mal uso de su discreción" constituye una admisión fatal en su contra.

La resolución conjunta número 20 es legislación de privilegio, en beneficio de un ciudadano en particular. Este tipo de ley está en desuso. De hecho, se ha cuestionado seriamente su validez constitucional frente al principio de igual protección de las leyes de la enmienda catorce de la Constitución federal, consagrado en el Art. II, sec. 7 de nuestra Constitución. Véanse Cooley *On Constitutional Limitations*, Vol. 2 (8va. ed.) 809, y los casos de *Alton V. Phillips Co.* v. *State*, 396 P.2d 537, 65 Wash.2d 199 (1964); *Garrett* v. *State*, 141 A.2d 249, 20 Conn. Sup. 496 (1958); *Altschul* v. *State*, 144 Pac. 124, 72 Or. 591 (1914).[6]

---

[6] En el citado caso de *Garrett* v. *State*, supra, se dijo: "El estatuto en el presente caso no pretende ser de aplicación general. Independientemente de cuántas personas puedan haber sufrido lesiones en forma negligente similar a la del demandante, este estatuto se propone permitir que el demandante, y solamente el demandante, pueda reclamar reparación. 'Ninguna legislación creadora de un privilegio puede resistir un ataque constitucional si el propósito de la Legislatura es conceder una ganancia o ventaja personal a un individuo.' *State ex rel., Higgins* v. *Civil Service Commission*, 139 Conn. 106, 90 A.2d 864." (Traducción nuestra.)

■ Estatutos de esta naturaleza son de interpretación restrictiva en favor del Estado. *Jiménez* v. *Pueblo*, 83 D.P.R. 201, 205 (1961); *Santiago* v. *Pueblo*, 74 D.P.R. 211 (1952); *Méndez* v. *Jiménez, Comisionado*, 72 D.P.R. 335, 339 (1951). La concesión por ley de ciertas facultades sin mencionar otras de la misma categoría es fuerte indicio de la intención legislativa de no incluir nada más que lo expresado, conforme al principio de *noscitur a sociis*. *Santos* v. *Ramos Cobián*, 87 D.P.R. 472, 478 (1963); *Salgado* v. *Comisión Hípica Insular*, 49 D.P.R. 464, 466 (1936). No podríamos, sin vulnerar esos principios, conceder que el propósito anunciado en el preámbulo de la resolución conjunta de permitir la demanda contra el Estado aunque el funcionario actuara en el desempeño de una función discrecional tuviera el efecto de limitar al Estado en cuanto a cualquier otro planteamiento al amparo del estatuto general que autoriza a que se le demande (Ley Núm. 104 de 1955). "Una ley autorizando a instruir un pleito contra el Estado no impone a éste ninguna obligación que de lo contrario no tenga. Su efecto es meramente conceder un remedio, siempre que de acuerdo con los principios aplicables exista responsabilidad sustantiva." *Jiménez* v. *Pueblo*, supra; *Ocasio* v. *Pueblo*, 79 D.P.R. 28 (1956) y *M. Grau e Hijos* v. *Pueblo*, 51 D.P.R. 13 (1937).

■ Concedemos que la afirmación que se hace en el susodicho preámbulo de que el Comisionado de Seguros "hizo mal uso de su discreción" participa de la naturaleza de una admisión. Pero es una admisión irreal, como sacada de la manga en arte de prestidigitación. La doctrina de la separación de poderes no exige a los tribunales de justicia a dar por correcto aquello que es obviamente erróneo. Permitirlo sería desnaturalizar la función de juzgar, función que compete por excelencia a la rama judicial. Al informar sobre una resolución conjunta con propósitos similares a la que nos ocupa, así lo reconoció la Comisión de lo Jurídico del Senado, al decir: "La Comisión, al hacer esta recomendación, es consecuente con

la norma general que se ha trazado de que sea el Poder Judicial el que pase sobre los méritos de la reclamación que tiene el ciudadano contra el Estado." (⁷)

Si ha de hacerse justicia en los méritos de un caso no puede permitirse que prevalezca lo irreal sobre lo real ni el error sobre la verdad. Es en la verdad donde radica la fortaleza de la justicia. La afirmación de que el Comisionado de Seguros hizo mal uso de su discreción es contraria a la realidad de que éste no ejerció función discrecional alguna. Es además contraria a derecho por cuanto dicho funcionario tenía por ley el deber de actuar como actuó. Si aceptásemos que tenemos que convalidar, no solamente los errores de hecho sino también los de derecho cometidos en un estatuto de privilegio como lo es la resolución conjunta número 20, ello en aras de la separación de poderes, y no empece ser manifiesto el error, estaríamos renunciando a descargar nuestra función de hacer justicia. No podemos concebir que la Asamblea Legislativa tuviera el propósito, mediante esta resolución conjunta, de asignar a los tribunales, en este caso, el encargo exclusivo de determinar *el monto de los daños sufridos por Rosario Cartagena.*

El Procurador General reconoció que la resolución conjunta número 20 que nos ocupa, no era una mera orden de pago a la que sólo le faltaba la inserción de la cantidad a pagarse. La resolución en cuestión no pasaba de ser una autorización para demandar al Estado, un tanto peculiar, en que se hizo renuncia de algunas defensas. La ley que creó el cargo de Procurador General—Núm. 7 de 15 de mayo de 1959, 3 L.P.R.A. secs. 84a y sigtes.—le señala como el representante del Estado Libre Asociado de Puerto Rico ante los tribunales.

---

(⁷) *Diario de Sesiones,* vol. VI, tomo I (1955), a la pág. 337, considerando la resolución conjunta que autorizó a Ana María Jiménez viuda de Ortiz a demandar al Estado por la muerte de su esposo a manos de un policía. Con base en dicha resolución se entabló el pleito que culminó en *Jiménez* v. *Pueblo,* supra.

En el cabal cumplimiento de su responsabilidad como tal era de esperarse que el Procurador General planteara todas aquellas defensas que no fueron renunciadas, máxime tratándose de un estatuto de restrictiva interpretación. Al así hacerlo, el Procurador General actuó acorde al más riguroso cumplimiento del deber como defensor de los intereses del Estado, que son los intereses de todo el pueblo.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en el caso 71-3369, que desestimó la demanda interpuesta por Víctor Rosario Cartagena contra el Estado Libre Asociado de Puerto Rico.*

El Juez Asociado, Señor Díaz Cruz, concurre con el resultado.