EDGARDO PACHECO NEGRÓN, FÉLIX F. RODRÍGUEZ, demandantes y recurridos, *v.* DR. RAMÓN A. CRUZ, SECRETARIO DEPARTAMENTO DE INSTRUCCIÓN PÚBLICA DE PUERTO RICO, demandado y recurrente.

*Número:* R-76-278          *Resuelto:* 28 de marzo de 1979

*Carlos E. Ríos, Secretario de Justicia, Roberto Armstrong, Jr., Procurador General Interino, Justo Gorbea Varona, Subprocurador General Interino y José Antonio Tulla,* abogado del Departamento de Justicia, abogados del recurrente; *Roberto Busó Aboy,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

La Ley Núm. 25 de 3 de junio de 1960 dispone como sigue en su Sec. 6 (18 L.P.R.A. sec. 249d) :

"Sec. 249d. —Maestros candidatos a cargos por elección.

Cuando un maestro de instrucción pública en *servicio activo* sea oficialmente nominado para un cargo de elección popular por un partido político y decida aceptar su candidatura, quedará automáticamente relevado del servicio diurno y nocturno a partir de la fecha en que su candidatura quede definitivamente radicada en la Secretaría de Estado hasta pasadas las elecciones generales en Puerto Rico; Disponiéndose que en tal caso el Secretario de Instrucción Pública concederá una licencia especial con paga al maestro concernido, desde la fecha de la radicación definitiva de su candidatura en el año de elecciones hasta un día después de celebradas las mismas. Esta licencia no será descontada de ningún otro tipo de licencia. En adición a dicha licencia con sueldo tendrá derecho a solicitar y disfrutar de licencia sin sueldo hasta la terminación del primer semestre escolar. De no salir electo podrá reintegrarse, si así lo deseare, a su antiguo cargo con los mismos derechos y prerrogativas que tuviere al momento de su separación. Si su plaza estuviere ocupada o si no hubiere una plaza vacante de la misma categoría en su distrito escolar el Secretario de Instrucción Pública prorrogará la licen-

cia especial con paga hasta la iniciación oficial del segundo semestre escolar. De salir electo, el Secretario de Instrucción Pública deberá concederle licencia sin sueldo por el período de su incumbencia en el cargo, si el maestro lo solicitare." (Énfasis nuestro.)

Plantea el presente recurso si viene obligado el Secretario de Instrucción Pública a contratar como maestros a aquellas personas que se hubieren estado desempeñando como maestros provisionales, sustitutos o temporeros a base de contratos de año en año, y que a su vez figuraren oficialmente como candidatos de partidos políticos para puestos de elección popular en un año de elecciones. Por entender que tales maestros no pueden considerarse "en servicio activo" resolvemos que no tienen derecho a ser nombrados para a su vez acogerse a los beneficios de dicha ley.

■ La cuestión ante nos se plantea a base de la situación de hechos que a continuación exponemos. En noviembre de 1976 se celebraron elecciones generales en Puerto Rico. Para agosto de dicho año alrededor de ochocientos maestros de instrucción pública habían indicado su intención de acogerse a los beneficios de la transcrita Sec. 6 de la mencionada Ley Núm. 25. De éstos, 356 habían sido debidamente certificados como candidatos a cargos electivos. En julio el Secretario de Instrucción impartió instrucciones para que no se contratara para el curso escolar que comenzaría el 2 de agosto a aquellos maestros que no ocupasen plazas en propiedad como maestros permanentes o probatorios([1]) y que hubieren aceptado nominaciones a cargos electivos en las elecciones de noviembre.

---

([1]) Los maestros permanentes gozan de contratos con carácter permanente. 18 L.P.R.A. sec. 214. Todos los maestros, excepto los especiales, caen bajo la clasificación de probatorios durante los primeros dos años de servicio continuo. 18 L.P.R.A. sec. 218, Reglamento para reclutamiento, selección, traslado y reasignación de maestros de instrucción pública, 28 de mayo de 1975, Art. XI. Los maestros probatorios son nombrados para ocupar una plaza por dicho período de prueba. (Reglamento, *supra*, Art. Id.)

Afectaba dicha directriz a los maestros contratados de año en año, cuyos contratos habían expirado al terminar el curso escolar inmediatamente precedente. Estos son los llamados maestros provisionales, sustitutos y temporeros. (²)

Los aquí recurridos, candidatos postulados por diferentes partidos políticos, (³) instaron demanda de *injunction* ante el Tribunal Superior, Sala de San Juan, para que, entre otras cosas, se ordenara al Secretario de Instrucción Pública a otorgar contratos a todos los maestros que para el 30 de junio de 1976 figuraban en listas de turnos para nombramiento, independientemente de que fueran o no candidatos a cargos electivos. El Secretario compareció y aceptó que los maestros permanentes y probatorios tenían derecho a los beneficios de la citada ley, pero no así los provisionales, sustitutos y temporeros, que trabajaban por contrato de año en año. Argumentó el Secretario que éstos no son maestros "en servicio activo" por haber expirado sus contratos al terminar el año escolar, y que sería absurdo otorgarles contrato para comenzar el 2 de agosto si en esa misma fecha vendría obligado el Secretario a relevarles y colocar en lugar de ellos maestros sustitutos para ocupar sus plazas por el tiempo dispuesto por la citada ley, con el impacto económico adverso para el erario público de que se estarían pagando dos sueldos por un solo trabajo.

---

(²) Maestro sustituto es aquél que posee un certificado regular de maestro y que ocupa una plaza de la misma categoría del certificado que posee por el período de un año escolar o fracción de éste por estar su incumbente disfrutando de licencia. (Reglamento, *supra*, Art. Ie.) Maestro temporero es aquél nombrado para ocupar una plaza por un período independientemente de que posea certificado regular o no de maestro. (Reglamento, *supra*, Art. If.) Maestro provisional es el que se nombra para ocupar una plaza en una categoría para la que no tiene certificado regular. (Reglamento, *supra*, Art. Ig.) Todo nombramiento con carácter sustituto o provisional se extenderá por todo o parte del período que comprende el curso escolar. (Reglamento, *supra*, Art. XII, Sec. 5.)

(³) La acción se instó como una para beneficio de una clase, es decir, los maestros que se encontraban en dicha situación.

El tribunal de instancia concluyó, sin embargo, que la interpretación dada por el Secretario al citado estatuto "tiene el efecto de crear unas clasificaciones entre las distintas categorías de maestros" y que, "[cuando] estas clasificaciones afectan derechos constitucionales . . . . las mismas están sujetas a un escrutinio judicial estricto," siendo el Estado "el que tiene el peso de demostrar que la clasificación es permisible constitucionalmente y que su propósito es razonablemente necesario." Convenimos en que toda clasificación que afecte derechos constitucionales debe ser examinada con rigurosidad, particularmente en atención a la cláusula sobre igual protección de las leyes. Pero aunque todo ciudadano tiene derecho a participar en los procesos democráticos que se activan en cada período eleccionario, cuando tal participación es solventada por el Estado mediante paga y beneficios especiales a determinados empleados públicos—como es el caso de la ley que nos ocupa—se crea un privilegio para una clase en particular que debe a su vez ser examinado y aplicado a base de un estricto escrutinio judicial.

El historial legislativo de la citada Ley Núm. 25 ninguna luz arroja sobre la intención legislativa al incorporarse la frase "en servicio activo" al proyecto que quedó finalmente redactado como la Sec. 6 que nos ocupa. Dicha frase fue adicionada por enmienda de la Cámara de Representantes, sin que se explicara el propósito de la enmienda en el informe que sobre ello se hizo. Véase el *Diario de Sesiones*, Vol. 13, Tomo 4. Es razonable pensar que dicha frase se tomó de la legislación que fuera derogada por la citada Ley Núm. 25. La Ley Escolar Compilada de Puerto Rico de 12 de marzo de 1903 disponía en su Sec. 52, según enmendada por la Ley Núm. 82 del 19 de agosto de 1925:

"Sec. 52.—Todos los maestros serán considerados como funcionarios o empleados del Gobierno Insular mientras estuviesen en servicio activo, mediante *contrato debidamente firmado por el Comisionado de Instrucción,* y no tomarán parte activa en las campañas políticas en ninguna forma; disponiéndose, sin em-

bargo, que cuando un maestro fuese nominado para un cargo público de elección popular y deseare defender su candidatura, deberá renunciar inmediatamente su cargo en el magisterio." (Énfasis nuestro.)

Al añadirse al proyecto que se convirtió en la Ley Núm. 25 de 3 de junio de 1960 el requisito de que estén "en servicio activo" los maestros favorecidos por dicha ley, tuvo necesariamente que tenerse en mente la Sec. 52 de la ley derogada que, como hemos visto, señalaba a renglón seguido de la frase "en servicio activo", la frase "mediante contrato debidamente firmado por el Comisionado de Instrucción." Es decir, que para estar en servicio activo el maestro tenía que estar contratado. Como secuela razonable se deduce que un maestro cuyo contrato ha expirado no está en servicio activo mientras está pendiente de que se le extienda un nuevo nombramiento y no tiene derecho a que se le extienda contrato para inmediatamente acogerse a una licencia con paga bajo las disposiciones de la mencionada ley. El maestro cuyo contrato ha expirado no está ocupando plaza alguna a la cual reintegrarse de no salir electo, según dispone la transcrita Sec. 6.

Estar en lista de turnos no equivale a estar en servicio activo. Quien está en lista de turnos no ha sido contratado aún. La alternativa para los maestros en tal situación es clara: optar por el aula mediante un contrato, u optar por la postulación y la campaña política.

La Ley Núm. 25 reconoce a los maestros de instrucción pública el derecho a participar en las contiendas democráticas que se activan en cada período eleccionario. Al mismo tiempo confiere a los que estén en servicio activo y opten por ser candidatos a elección el derecho de acogerse a licencia con paga desde la fecha en que sus candidaturas queden definitivamente radicadas en la Secretaría de Estado hasta pasadas las elecciones. Este derecho es de naturaleza privilegiada, por lo que su alcance debe interpretarse restrictivamente. *Rosario Cartagena* v. *E.L.A.*, 101 D.P.R. 620, 630–631 (1973).

Antes del 1976 no se había suscitado el problema con que ahora nos confrontamos porque las nominaciones para cargos electivos no se hacían hasta septiembre. Para dicho mes, ya los maestros habían sido contratados y los cursos escolares habían comenzado. Los maestros contratados estaban por tanto en servicio activo al optar por ser candidatos y ser nominados en septiembre. La situación cambió para las elecciones del 1976, en que el Código Electoral vigente requería la celebración de primarias el segundo domingo de julio del año de elecciones (Art. 6.007), debiéndose certificar sus resultados por el Tribunal Electoral "dentro de los diez días siguientes. (Art. 6.028.) En cuanto a los candidatos independientes, éstos tenían que presentar sus peticiones ante el Tribunal Electoral por lo menos quince días antes de la fecha de las primarias, y si no cualificaban, tenían hasta el mediodía del día de las primarias para presentar nuevas peticiones de nominación. (Art. 4.005.) Las candidaturas eran, por tanto, oficiales con antelación al comienzo del curso escolar, lo cual daba oportunidad al Secretario de Instrucción Pública de conocer cuales maestros serían candidatos a elección popular y desarrollar los planes educativos para el nuevo curso a base del presupuesto asignádole.

Bajo la Ley Electoral actualmente en vigor—Ley Núm. 4 de 20 de diciembre de 1977 (16 L.P.R.A. secs. 3001 a 3383)— la situación seguirá siendo igual que bajo el Código Electoral vigente en 1976. La nueva ley dispone que las primarias se celebren "el último domingo del mes de mayo del mismo año en que se celebren elecciones generales" (16 L.P.R.A. sec. 3158), y los candidatos nominados en primarias serán certificados por la Comisión Electoral dentro de los diez días siguientes. (16 L.P.R.A. sec. 3174.) En cuanto a candidatos independientes, la vigente ley les requiere "radicar todas sus peticiones en la Comisión no más tarde de los ciento ochenta (180) días de antelación a la fecha señalada para la elección a que aspire." (16 L.P.R.A. sec. 3177.) Como las elecciones

generales se celebran "el primer martes después del primer lunes" de noviembre (16 L.P.R.A. sec. 3201), el Secretario de Instrucción podrá conocer desde fines de mayo o principios de junio en un año de elecciones la situación de los maestros postulados a cargos electivos, y tomar las providencias que estime necesarias en relación con los maestros a ser contratados. El número de maestros que puedan acogerse a los beneficios de la Ley Núm. 25 podría tener un impacto económico perjudicial respecto a los fondos disponibles para el Departamento de Instrucción, lo cual es de la incumbencia del Secretario de Instrucción. La obediencia de dicha ley resultaría en un costo doble por la labor de cada maestro acogido a sus beneficios: la paga al maestro que esté en campaña política, y la paga a quien le sustituya en el salón de clases.(4)

Ninguna persona tiene un derecho absoluto a que se le nombre en un cargo público. Véase *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577-578 (1972). Los maestros contratados para un determinado curso escolar están en servicio activo mientras estén vigentes sus contratos, como están en servicio activo los maestros contratados permanentemente y los probatorios durante los dos años de servicio continuo para los que son nombrados. Al expirar el contrato de un maestro nombrado por un año, deja éste de estar en servicio activo hasta que se le extienda un nuevo contrato. El Secretario de Instrucción Pública tiene la obligación de "vigilar por la instrucción en Puerto Rico", y "deberá intervenir en todos los desembolsos hechos para propagarla." 3 L.P.R.A. sec. 142. En el descargo de esas funciones actuó correctamente el Secretario aquí recurrente al impedir que se

---

(4) Señala el tribunal de instancia que según cálculos del Departamento de Instrucción, la paga por licencia a maestros candidatos a cargos electivos en las elecciones de 1976 habría de costar "alrededor de tres millones de dólares en sueldos."

contrataran como maestros de instrucción pública a personas que no iban a actuar como tales por haber optado por ser candidatos a elección popular.

■ Por no estar planteado ante nos el aspecto de validez constitucional de la Sec. 6 de la tantas veces mencionada Ley Núm. 25 de 3 de junio de 1960, no estamos justificados en pronunciarnos sobre el particular. *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267, 271 (1975); *Mari Bras* v. *Alcaide*, 100 D.P.R. 506, 513 (1972). Además la controversia ante nos se centra en la determinación de si los maestros contratados de año en año están en servicio activo. Resuelto esto, resulta académico explorar otros aspectos constitucionales.

*Se revocará la sentencia recurrida.*

El Juez Asociado Señor Negrón García disintió en opinión separada.

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 28 de marzo de 1979

Al pasar juicio sobre la constitucionalidad de la Sec. 6 de la Ley Núm. 25 de 3 de junio de 1960 (18 L.P.R.A. sec. 249d), lo hacemos bajo la hipótesis de que la norma tradicional de abstención no aplica al caso de autos por estar subordinada debido al usufructo histórico que ata esta ley a los partidos políticos y maestros, y la creencia honesta de que por ésta y otras razones el Departamento de Instrucción Pública y los maestros cobijados bajo la misma nunca la impugnaran. En este sentido, el caso plantea crudamente el uso y erogación ilegal de fondos públicos con la conformidad y auspicios de una clase—magisterio—de gran ascendencia e influencia en el panorama político del país.

Con absoluta respetuosidad a criterios distintos, reiteramos nuestra convicción judicial—anticipada([1]) desde el 3 de agosto de 1976—de que el subsidio específico a los maestros por participar en campañas políticas, no resiste la prueba de estricto escrutinio judicial formulado en *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267, 277–278 (1975), y es inconstitucional. Apoyamos esta conclusión en varios fundamentos.

Se establecen distinciones discriminatorias, no solo entre dicha clase, sino con referencia a los demás funcionarios gubernamentales, algunos de los cuales les está vedado postular sus candidaturas en las lides electorales. *Hermina González* v. *Srio. del Trabajo*, 107 D.P.R. 667 (1978).([2]) En este último caso, una mayoría del Tribunal suscribió el siguiente lenguaje, aplicable al de autos:

"[E]l discrimen y la erosión política no deben estar al servicio del empleado público-político activo. El interés del Estado en conservar un cuerpo de seguidores públicos diestros competentes y objetivos, posterga toda consideración del reclamo personal del empleado para hacer campaña o lanzar su candidatura a cargo electivo desde la plataforma de su empleo. La incompatibilidad entre servir al pueblo y servirse a uno mismo hiere la retina. La fundamental igualdad ante la ley impugna y excluye esta doble personalidad de servidor público y político, *con ventajas y mecanismos de fomento del provecho personal que no tienen ni otros candidatos ni tampoco otros empleados.*" (Bastardillas nuestras.)

---

([1]) En ocasión de nuestra primera Resolución, en que se hizo constar que los jueces ". . . Díaz Cruz, Irizarry Yunqué y Negrón García expedirían por entender que la Ley . . . es inconstitucional", criterio compartido también por el Juez Asociado Señor Torres Rigual.

([2]) El defecto constitucional apuntado prevalecería aun bajo los términos de la opinión allí minoritaria, en el sentido de que "El derecho a ser candidato a un cargo público electivo es un derecho de importancia indisputable, mas no absoluto. El Estado puede legalmente subordinar ese derecho, siempre que el estatuto que se diseñe a tal fin no peque de vaguedad, *amplitud excesiva, discrimen u otras fallas constitucionales conocidas, al propósito de establecer un servicio civil desventajado.*" (Bastardillas nuestras.)

Someto al sentido común del lector que esta disposición de ley, en lugar de aislar la política partidista de las escuelas, la fomenta y promueve, desvirtuando el propósito legislativo de "mantener un ambiente docente libre de banderías, prejuicios y pasiones de toda clase." El estímulo y mensaje son claros, a saber: "maestro entra en política, que mientras se decide si eres o no electo, continuarás devengando tu sueldo sin que rindas servicio pedagógico alguno." [3] Ello es así pues para un maestro beneficiarse de la licencia con paga tiene que ser certificado como candidato de manera oficial. Esto implica que previamente habrá realizado activamente una campaña como aspirante de un partido político o como candidato independiente en el proceso primarista o de pre-candidatura, cuando todavía labora como maestro.

Esta ley ilustra como en una sociedad erigida sobre bases democráticas, el péndulo puede oscilar a extremos irrazonables y peligrosos, a saber, desde una prohibición estatutaria al magisterio de participar activamente en la política (Sec. 52 de la Ley Escolar Compilada aprobada en 12 de marzo de 1903) hasta la eliminación de este interdicto legislativo con el exceso de una licencia especial con sueldo sin rendir servicio alguno.

Confirmaría el decreto de inconstitucionalidad del tribunal de instancia.

---

[3] En el Informe de la Comisión de Carta de Derechos de la Asamblea Constituyente, al comentar el establecimiento de un sistema de instrucción pública, se consigna la existencia de ". . . una íntima correspondencia entre la cultura y la ley." *Diario de Sesiones*, Tomo 4, 2564 (ed. 1961). En momentos en que en el país se debate públicamente la crisis y el estado de deterioro físico y académico de las instituciones educativas, y la escasez de medios económicos para afrontar tales problemas y mejorar los sueldos del magisterio, resulta una falta de civilidad la vigencia de la ley que nos ocupa.